**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

|  |  |
|---|---|
| PAULSON PRV HOLDINGS LLC; DUO CONDADO JV HOLDINGS LLC; BAHIA BEACH HOLDING COMPANY LLC; AIP PR HOLDINGS LLC; SJ BEACH PR LLC; AND REGENCY ACQUISITION LLC,<br><br>Plaintiffs,<br><br>v.<br><br>FAHAD GHAFFAR; GLENDA ACEVEDO-MARTINEZ; GLEN ACEVEDO; AMIR GHAFFAR; SAIRA GHAFFAR; FARAH VAYANI; NERISSA APONTE; THINKING AHEAD LLC; GGSG LLC; COVERISQ LLC; TYGATE PTE LTD.; AND SYBER GROUP LLC,<br><br>Defendants. | CIVIL NO. 23-1521 (SCC) |

**DEFENDANTS FAHAD GHAFFAR AND THINKING AHEAD LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO**
**DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**
<u>**PURSUANT TO FED. R. CIV. P. 12(b)(6)**</u>

Harold D. Vicente-Colón
USDC -PR 211805

Harold D. Vicente Gonzalez
USDC-PR 117711
Vicente Law LLC
Capital Center Sur Ph1-1201
239 Arterial Hostos, Hato Rey
(787) 751-8000
hdvc@vclawpr.com

José A. Andréu-Fuentes
USDC-PR 204409
Alfredo M. Umpierre-Solor
USDC-PR 226205
Andréu & Sagardia
261 Ave. Domenech
San Juan, PR 00918-3518
(787) 754-1777
jaf@andreu-sagardia.com

RUSSO PLLC
Martin P. Russo (*pro hac vice*)
Robert Sidorsky (*pro hac vice*)
Daniel Branower (*pro hac vice*)
350 Fifth Avenue, Suite 7230
New York, New York 10118
(212) 363-2000
martin@russopllc.com

FOSTER P.C.
Howard W. Foster, Esq. (*pro hac vice*)
155 North Wacker Drive, Suite 4250
Chicago, Illinois 60606
(312) 726-1600
HFoster@fosterpc.com

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

SUMMARY OF RICO COMPLAINT ..................................................................... 3

ARGUMENT ........................................................................................................... 6

THE PLEADING STANDARDS ............................................................................. 6

I.     THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF RICO ............. 8

    A.     The RICO Claims Should Be Dismissed Because They Do Not Allege Injury From the Investment of Racketeering Income into an Enterprise ............................................... 8

    B.     The Complaint Does Not Allege a Pattern of Racketeering Activity ............................ 11

    C.     The Complaint Does Not Properly Allege Any Predicate Acts .................................... 13

       1.     Embezzlement Is Not a Predicate Act ..................................................... 13

       2.     The Allegations of Extortion Fail to Plead a Predicate Act ....................................... 14

       3.     The Claim of Fraud in the Purchase of Shares in Innoveo Is Not Actionable .......... 15

    D.     The Complaint Fails to Allege the Existence of an "Enterprise".................................. 17

    E.     Plaintiffs' Conspiracy Claims Under § 1962(d) Should Be Dismissed and the Court Should Decline to Exercise Supplemental Jurisdiction ............................................ 18

II.     EACH OF THE NON-RICO CLAIMS SHOULD BE DISMISSED.................................. 19

    A.     The Complaint Runs Afoul of Rule 8's Basic Requirements and Fails to Specify the Injured Parties ................................................................................................... 19

    B.     The Complaint Fails to Sufficiently Allege Standing .................................................. 20

    C.     Each of the Fraud Claims Is Insufficient Pursuant to Rule 9(b) ................................. 22

    D.     Plaintiffs' Claim for Breach of Fiduciary Duty Fails.................................................... 23

    E.     Plaintiffs' Claim for Damages Under Puerto Rico's General Tort Statute Fails .......... 24

    F.    Plaintiffs' Claim for Unjust Enrichment Fails .............................................................. 25

CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Ahmed v. Rosenblatt,*
  118 F.3d 886 (1st Cir. 1997)..................................................................................... 7

*Alejandro-Martinez v. Ortiz-Vazquez*, Civil,
  No. 10-1541(CCC), 2011 WL 4807714 (D.P.R. Oct. 11, 2011) ............................... 8

*Allen v. Wright,*
  468 U.S. 737 (1984)................................................................................................. 21

*Allstate Ins. Co. v. Seigel,*
  312 F. Supp.2d 260 (D. Conn. 2004)....................................................................... 10

*American Towers, Inc. v. Town of Falmouth, Maine,*
  217 F. Supp.2d 154 (D. Maine 2002) ...................................................................... 20

*Annulli v. Panikkar,*
  200 F.3d 189 (3d Cir. 1999)..................................................................................... 13

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................................... 6, 7

*Aulson v. Blanchard,*
  83 F.3d 1 (1st Cir. 1996).............................................................................................. 7

*Bell Atlantic v. Twombly,*
  550 U.S. 544 (2007)........................................................................................ 6, 7, 24

*Calderon Serra v. Banco Santander Puerto Rico,*
  747 F.3d 1 (1st Cir. 2014)........................................................................................ 16

*Caro-Bonet v. Lotus Mgmt. LLC,*
  Civil No. 15-2106, 2018 WL 3629917 (D.P.R. July 27, 2018) ............................... 18

*Compagnie De Reassance D'Ile de France v. New England Reinsurance Corp.,*
  57 F.3d 56 (1st Cir. 1995)............................................................................... 8, 9, 10

*Conservation Law Foundation of New England, Inc. v. Reilly,*
  950 F.2d 38 (1st Cir. 1991)...................................................................................... 21

*Dantzler, Inc. v. Empresas Berrios Inventory and Operations, Inc.,*
  958 F.3d 38 (1st Cir. 2020)...................................................................................... 21

*Diaz v. Arencibia,*
 Civil No. 07-2097 (JAF), 2009 WL 1444274 (D.P.R. May 20, 2009) ................................... 18

*Doyle v. Hasbro, Inc.,*
 103 F.3d 186 (1st Cir. 1996) ...................................................................................... 7, 22

*Dura Pharm., Inc. v. Broudo,*
 544 U.S. 336 (2005) ........................................................................................................ 16

*Efron v. Embassy Suites (Puerto Rico), Inc.,*
 47 F. Supp.2d 200 (D.P.R. 1999) ..................................................................................... 1

*Efron v. Embassy Suites (Puerto Rico), Inc.,*
 223 F.3d 12 (1st Cir. 2000) ................................................................... 11, 12, 13, 18

*Fabrica de Muebles J.J. Alvarez, Inc. v. Westernbank de Puerto Rico,*
 No. 09-1558, 2009 WL 4730776 (D.P.R. Dec. 4, 2009) ........................................ 10

*Falise v. American Tobacco Co.,*
 94 F. Supp.2d 316 (E.D.N.Y. 2000) ................................................................................ 10

*Feinstein v. Resolution Trust Corp.,*
 942 F.2d 34 (1st Cir. 1991) ...................................................................................... 7, 11

*Fuce v. West,*
 Civil No. 12–0874, 2012 WL 3046235 (E.D. Pa. July 26, 2012)............................... 13

*George Lussier Enters., Inc. v. Subaru of New Eng., Inc.,*
 393 F.3d 36 (1st Cir. 2004) ............................................................................................. 15

*Giuliano v. Fulton,*
 399 F.3d 381 (1st Cir. 2005)............................................................................................ 12

*H.J. Inc. v. Northwestern Bell Tel. Co.,*
 492 U.S. 229 (1989)........................................................................................................ 11

*Hemi Group, LLC v. City of New York, N.Y.,*
 559 U.S. 1 (2010).......................................................................................................... 16

*Hernandez v. Ballesteros,*
 333 F. Supp.2d 6 (D.P.R. 2004)................................................................................ 16, 18

*Hill v. Gozani,*
 638 F.3d 40 (1st Cir. 2011)............................................................................................. 16

*Hindes v. Castle*,
    937 F.2d 868 (3d Cir. 1991)........................................................................ 11

*Hochendoner v. Genzyme Corp.*,
    823 F.3d 724 (1st Cir. 2016)............................................................... 20, 21

*Holmes v. Sec. Inv. Protection Corp.*,
    503 U.S. 258 (1992)................................................................................... 16

*Home Orthopedics Corp. v. Rodriguez*,
    781 F.3d 521 (1st Cir. 2015)..................................................................... 12

*Humana, Inc. v. Biogen, Inc.*,
    No. CV 21-11578-FDS, 2023 WL 2743307 (D. Mass. Mar. 31, 2023) ..................................... 1

*In re Tether & Bitfinex Crypto Asset Litig.*,
    576 F. Supp.3d 55 (S.D.N.Y. 2021)........................................................... 17

*In re Tyco Int'l., Ltd.*,
    No. MDL 02-1335-B, 2007 WL 1703023 (D.N.H. 2007 ) ...................... 10

*Int'l Longshoreman's Ass'n*,
    518 F. Supp.2d 422 (E.D.N.Y. 2007) ...................................................... 15

*Kaczmarek v. Inter. Bus. Machs. Corp.*,
    30 F. Supp.2d 626 (S.D.N.Y. 1998)........................................................ 10

*Latin Am. Music Co. v. Disco Hit Productions*,
    Civil 02-1788 (ADC), 2006 WL 8449986 (D.P.R. June 19, 2006) .......... 7

*Lerner v. Colman*,
    485 F. Supp.3d 319 (D. Mass. 2020) ........................................................ 18

*Lightening Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993).......................................................................... 8

*Maldonado v. Fontanes*,
    568 F.3d 263 (1st Cir. 2009)....................................................................... 6

*Mardones v. Levimar Guesthouse, Inc.*,
    No. CV 22-1431 (MEL), 2023 WL 7167598 (D.P.R. Oct. 30, 2023) .... 25

*MCDP Phoenix Servs. PTE Ltd. v. First Fin. Int'l Bank, Inc.*,
    Civil No. 21-1534 (JAG), 2023 WL 2652644 (D.P.R. Mar. 27, 2023) ..................................... 7

*Miranda-Rodriguez v. Ponce Fed. Bank, F.S.B.*,
    751 F. Supp. 18 (D.P.R. 1990) ........................................................................... 18

*Molina v. Union Independiente Autentica de LA AAA*,
    750 F. Supp.2d 417 (D.P.R. 2010) ..................................................................... 10

*Montalvo v. LT's Benjamin Records, Inc.*,
    56 F. Supp.3d 121 (D.P.R. 2014) ....................................................................... 25

*Nat'l Org. for Women, Inc. v. Scheidler*,
    510 U.S. 249 (1994) ........................................................................................... 17

*Norfe Group Corp. v. R.Y. Espinosa, Inc.*,
    Civil No. 19-1897(BJM), 2021 WL 5235119 (D.P.R. Nov. 9, 2021) ..................... 16

*Ocasio-Hernandez v. Fortuno-Burset*,
    640 F.3d 1 (1st Cir. 2011) ............................................................................... 7, 24

*One World, LLC v. Manolakos*,
    No. 20-CV-11837-RWZ, 2022 WL 20595078 (D. Mass. May 12, 2022) ................ 8

*Orocovis Petroleum Corp. v. Puerto Rico Ports Authority*,
    Civil No. 08-2359 (GAG/BJM), 2010 WL 3420004 (D.P.R. Aug. 2, 2010) .............. 15, 17, 18

*Ouaknine v. MacFarlane*,
    897 F.2d 75 (2d Cir. 1990) .................................................................................... 9

*Puerto Rico Clean Energy Corp. v. Hatton-Gotay*,
    115 F. Supp.3d 288 (D.P.R. 2015) ................................................................. 12, 19

*Puerto Rico Medical Emergency Group, Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*,
    118 F. Supp.3d 447 (D.P.R. 2015) ....................................................................... 8

*Rel. Kelly v. Novartis Pharm. Corp.*,
    827 F.3d 5 (1st Cir. 2016) ................................................................................... 22

*Roman Rivera v. Puerto Rico Elec. Power Auth.*,
    No. CV 11-2003(DRD), 2012 WL 13170557 (D.P.R. Sept. 25, 2012) ............ 8, 9, 10

*Ruiz-Rosa v. Rullan*,
    485 F.3d 150 (1st Cir. 2007) ............................................................................... 20

*Sanchez v. Pereira-Castillo*,
    590 F.3d 31 (1st Cir. 2009) ............................................................................... 6, 7

*Sanchez v. Triple-S Mgmt., Corp.*,
　492 F.3d 1 (1st Cir. 2007) ................................................................................. 14

*Spool v. World Child Int'l Adoption Agency*,
　520 F.3d 178 (2d Cir. 2008) ............................................................................. 13

*Sys. Mgmt., Inc. v. Loiselle*,
　303 F.3d 100 (1st Cir. 2002) ............................................................................ 12

*Toms v. Pizzo*,
　4 F. Supp.2d 178 (W.D.N.Y. 1998) ................................................................. 14

*Tooker v. Guerrera*,
　No. 15 Civ. 2430 (JS) (ARL), 2017 WL 3475994 (E.D.N.Y. Aug. 11, 2017) ........................ 17

*Trinidad v. IDI Holdings PR, Inc.*,
　708 F. Supp.2d 137 (D.P.R. 2005) ................................................................... 19

*United Mine Workers v. Gibbs*,
　383 U.S. 715 (1966) ......................................................................................... 19

*United States v. Munoz-Martinez*,
　79 F.4th 44 (1st Cir. 2023) .............................................................................. 14

*United States v. Nascimento*,
　491 F.3d 25 (1st Cir. 2007) ............................................................................. 18

*United States v. Pelullo*,
　964 F.2d 193 (3d Cir. 1992) ............................................................................ 11

*USA Certified Merchants, LLC v. Koebel*,
　262 F. Supp.2d 319 (S.D.N.Y. 2003) .............................................................. 17

*Vazquez Filippetti v. Banco Popular de P.R.*,
　504 F.3d 43 (1st Cir. 2007) ............................................................................. 25

<u>Statutes</u>

18 U.S.C. § 664 .................................................................................................. 13, 14

18 U.S.C. § 1343 ...................................................................................................... 12

18 U.S.C. § 1951(b)(2) .............................................................................................. 4, 14

18 U.S.C. § 1961(1) ........................................................................................... 2, 13, 14

18 U.S.C. § 1962(a) ........................................................................................... *passim*

18 U.S.C. § 1962(c) ................................................................................................ 2, 17

18 U.S.C. § 1962(d) ............................................................................................ 2, 3, 18

18 U.S.C. §1964(c) .................................................................................................... 16

28 U.S.C. § 1367(c) .................................................................................................... 19

29 U.S.C. § 501(c) ................................................................................................ 13, 14

Rules

Fed. R. Civ. P. 8 ..................................................................................................... 7, 19

Fed. R. Civ. P.  9(b) ............................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6)........................................................................................ *passim*

Other Authorities

David B. Smith & Terrance G. Reed, CIVIL RICO ¶5.02[1] (Bender) .......................................... 2

Defendants Fahad Ghaffar ("Fahad") and Thinking Ahead LLC ("Thinking Ahead") (together, "Defendants"), by their undersigned counsel, respectfully move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Paulson Entities' Racketeering Influenced and Corrupt Organizations Act ("RICO") Complaint ("Compl.") for failure to state a RICO claim, and likewise move to dismiss all the other, supplemental non-RICO claims pursuant to Rule 12(b)(6).  As set forth below, none of the five RICO counts or the other claims states a valid cause of action and they should be dismissed with prejudice.

## PRELIMINARY STATEMENT

Plaintiffs filed their retaliatory RICO Complaint only after Fahad, following his wrongful termination, commenced an arbitration proceeding in New York asserting his contractual right to his share of the hundreds of millions of dollars in profits generated by his successful turnaround of the Paulson-owned hotels and real estate portfolio in Puerto Rico.  It is all too apparent that the Complaint was filed for its *in terrorem* effect and as part of concerted smear campaign, seeking to transform what in essence is a "bitter local law dispute between partners," into a made-up criminal enterprise through a mishmash of mudslinging allegations.[1]  *See Efron v. Embassy Suites (Puerto Rico), Inc.*, 47 F. Supp.2d 200, at 211 n.11 (D.P.R. 1999), *aff'd*, 223 F.3d 12, 15 (1st Cir. 2000*)*. Indeed, Plaintiffs' RICO Case Statement revealed that much of the Complaint, with its hodgepodge of unfounded allegations, is served up to create a false portrayal with no connection to the RICO or other causes of action.

---

[1]  As courts in this Circuit have often cautioned: "[I]n cases alleging civil RICO violations, particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants.  Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device.  The very pendency of a RICO suit can be stigmatizing and its consummation can be costly.  Accordingly, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Humana, Inc. v. Biogen, Inc.*, No. CV 21-11578-FDS, 2023 WL 2743307, at *7 (D. Mass. Mar. 31, 2023) (cleaned up).

As set forth below, the Complaint is riddled with fatal defects that require dismissal with prejudice.  Plaintiffs' RICO claims are predicated upon alleged violations of 18 U.S.C. § 1962(a), a rarely invoked subsection that requires that plaintiff be harmed by reason of the distinct damages flowing from investment of racketeering income into an enterprise.[2]  The Complaint cannot overcome this insuperable hurdle, as it fails to allege distinct or additional damages as a result of investment of racketeering income.  Second, Plaintiffs' separately-pled RICO claims fail to sufficiently allege a "pattern" of racketeering activity with respect to each claim based on alleged acts of wire fraud.  Third, the RICO claims fail to allege the requisite predicate acts of racketeering activity, which offenses are expressly set forth in 18 U.S.C. § 1961(1).  The core of the Complaint, alleging that Fahad "embezzled" monies belonging to Paulson Entities, is not a specified predicate act and cannot support a RICO claim.  Plaintiffs also fail to properly plead alleged predicate acts of extortion or any actionable fraud in connection with a securities transaction.  Fourth, the Complaint fails to plead the existence of an "enterprise" for purposes of § 1962(a).  Instead, it resorts to dragging Fahad's wife, siblings, and assistant into the fray, alleging five different "association-in-fact" enterprises as separately configured for each of the five RICO claims.  Having failed for myriad reasons to state a viable RICO claim based on § 1962(a), Plaintiffs' conspiracy claims under § 1962(d) must also be dismissed with prejudice.

For the reasons detailed below, Plaintiffs' non-RICO claims also fail to withstand scrutiny and should be dismissed.

---

[2]  There are almost no reported decisions upholding RICO claims based on violations of §1962(a). *See* David B. Smith & Terrance G. Reed, Civil RICO ¶5.02[1] (Bender) ("The effect of these decisions [on injury from investment of racketeering income] is to turn 1962(a) into a dead letter again because almost no potential plaintiffs can satisfy the special standing requirements.  The courts have barred the door to civil RICO liability under section 1962(a) in order to prevent plaintiffs from getting around restrictions imposed on section 1962(c) liability.").

## SUMMARY OF RICO COMPLAINT

Plaintiffs filed their Complaint on October 16, 2023 (ECF No. 1).  On December 21, 2023, Plaintiffs filed a RICO Case Statement (ECF No. 52) pursuant to the Court's Order dated November 29, 2023.  The Complaint alleges five distinct Counts of violation of RICO, each alleging a separate violation of § 1962(a) and § 1962(d).

Count I alleges that Defendants Fahad, Glendaliz Acevedo-Martinez ("Glenda"), who is Fahad's wife, Nerissa Aponte ("Nerissa"), who was Fahad's personal assistant, and/or GGSG LLC ("GGSG"), a shell company of which Glenda is the sole member, devised a scheme to defraud Plaintiffs and furthered the financial interests of the enterprise through a pattern of racketeering activity, thereby causing damages to Plaintiffs.  Compl. ¶ 167.  The scheme as alleged sought to enrich Glenda and GGSG through the use of GGSG as an intermediary to purchase outdoor furniture for the Duo Condado Hotel and St. Regis Bahia Beach Resort from a European furnituremaker "in order to secure commissions to which Glenda and/or GGSG had no right."  *See* RICO Case Statement, Section 5, at p. 8 (COUNT I d.).  The RICO Case Statement alleges that the pattern of racketeering activity alleged in Count I is based on three predicate acts of wire fraud, consisting of three e-mails sent between April 5, 2021 and July 14, 2023.  *Id*. at p. 7 (COUNT I a.).  Count I alleges that Defendants Fahad, Glenda, Nerissa, and GGSG operated as an "association-in-fact enterprise" and that they "used and invested the income they derived through the pattern of racketeering activity targeting Plaintiffs to further their operations," in violation of § 1962(a).  Compl. ¶¶ 168, 169.

Count II alleges that Defendants Fahad, Amir Ghaffar ("Amir), who is Fahad's brother, Nerissa, Coverisq LLC ("Coverisq"), and Tygate Pte. Ltd. ("Tygate") engaged in a scheme to defraud Plaintiff Paulson PRV Holdings LLC ("PRV") through "extortionate acts" committed "as

part of Fahad and Amir's efforts to push-out Paulson PRV's legitimate insurance brokers, … in order to secure Paulson PRV's insurance business for Amir's companies" and sent fraudulent mailings "in furtherance of the fraudulent scheme to obtain higher commission payouts for Coverisq by inflating the insurance premiums charged to Paulson PRV …." *See* RICO Case Statement, Section 5, at p. 10 (COUNT II d.). The RICO Case Statement alleges that the pattern of racketeering activity alleged in Count II is based on predicate acts of extortion or attempted extortion in violation of 18 U.S.C. § 1951(b)(2) and two acts of wire fraud, consisting of an email sent on June 3, 2023 and an email sent on July 7, 2023. *Id*. at p. 8 (COUNT II a.). Count II alleges that Defendants Fahad, Amir, Nerissa, Coverisq, and Tygate operated as an "association-in-fact enterprise" and that they "used and invested the income they derived through the pattern of racketeering activity targeting Paulson to further its operations," in violation of § 1962(a). Compl. ¶¶ 175, 176.

Count III alleges that Defendants Fahad, Nerissa, and Thinking Ahead, a shell company of which Fahad is alleged to be the only member, devised a scheme to defraud Plaintiffs through embezzlement by Fahad of monies belonging to the Paulson Entities. Compl. ¶ 181. The RICO Case Statement alleges that the pattern of racketeering activity alleged in Count III is based on purported predicate acts of embezzlement in violation of Article 182 of the Puerto Rico Penal Code, consisting of Fahad allegedly charging Plaintiffs for personal travel and entertainment expenses, including reimbursement of monies spent on nightclubs, restaurants, concert tickets, and shopping, reimbursement of allegedly personal expenditures through Thinking Ahead, allegedly causing personal domestic staff to be placed on one of the Paulson Entities' payroll, and allegedly running exorbitant tabs at Paulson hotels. RICO Case Statement, Section 5, at pp. 10-13 (COUNT III a.). Count III alleges that Defendants Fahad, Nerissa, and Thinking Ahead operated as an

"association-in-fact enterprise" and that they "used and invested the income they derived through the pattern of racketeering activity targeting Plaintiffs … to further the operations of the enterprise," in violation of § 1962(a).  Compl. ¶¶ 182, 183.

Count IV alleges that Defendants Fahad and Amir devised a scheme to defraud Plaintiff PRV by Fahad procuring an investment of approximately $12 million from Paulson in Innoveo Inc., a software company formed by Amir, allegedly "[u]sing Innoveo's inflated financials propped up by Paulson Company business that Fahad unilaterally assigned to Innoveo."  RICO Case Statement, Section 5, at p. 14 (COUNT IV c.).  The RICO Case Statement alleges that the pattern of racketeering activity alleged in Count IV is based on two predicate acts of wire fraud, consisting of an email sent on April 6, 2021 and an email sent two days later, on April 8, 2021.  *Id*. at p. 13 (COUNT IV a.).  The Complaint further alleges that Defendants Fahad and Amir operated as an "association-in-fact enterprise" and that they "used and invested the income they derived through the pattern of racketeering activity targeting Plaintiffs to further their operations," in violation of § 1962(a).  Compl. ¶¶ 189, 190.

Count V alleges that Defendants Fahad, Saira Ghaffar ("Saira"), and Nerissa devised a scheme to defraud Plaintiff Bahia Beach Holding Company LLC "by having Saira sell them low-quality goods at inflated prices in order to pocket a higher commission."  RICO Case Statement, Section 5, at pp. 14-15 (COUNT V a.).  The RICO Case Statement alleges that the pattern of racketeering activity alleged in Count V is based on two predicate acts of wire fraud, consisting of an email sent on June 14, 2023 and an email sent less than a month later, on July 3, 2023.  *Id*.  The Complaint further alleges that Defendants Fahad, Saira, and Nerissa operated as an "association-in-fact enterprise" and that they "used and invested the income they derived through the pattern of

racketeering activity targeting Plaintiff to further their operations," in violation of § 1962(a). Compl. ¶¶ 196, 197.

For the reasons set forth below, each of these separately-pled RICO Counts fails to state a claim.[3]

## ARGUMENT

## THE PLEADING STANDARDS

Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), to withstand a motion to dismiss a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Under the two-step "plausibility" standard established by *Twombly*, the Court in considering a motion to dismiss must first "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. 678). Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. 679.[4]

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41

---

[3] Much of the Complaint consists of a farrago of easily disproved allegation of fraudulent conduct by Fahad that are not part of and have nothing to do with the RICO claims, ranging from Fahad loaning a used car to his father-in-law to submitting an insurance claim for a lost watch.

[4] This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

(1st Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but has not 'show[n]' 'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation."  *Id*. at 685 (citing *Twombly*, 550 U.S. at 567).[5]

Furthermore, when the complaint alleges claims of fraud, as in this case, they are subject to the heightened pleading requirements of Fed. R. Civ. P.  9(b).[6]  *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996).  This heightened pleading requirement holds particularly true in the case of RICO claims, as the First Circuit has reiterated "that RICO pleadings of mail and wire fraud must satisfy the particularity requirements of Rule 9(b)."  *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997) (citing *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991)).  *See also MCDP Phoenix Servs. PTE Ltd. v. First Fin. Int'l Bank, Inc*., Civil No. 21-1534 (JAG), 2023 WL 2652644, at*3 (D.P.R. Mar. 27, 2023) ("Due to the exceptional nature of the statute, complaints that allege a RICO claim must comply with uniquely stringent pleading standards to survive a motion to dismiss."); *Latin Am. Music Co. v. Disco Hit Productions*, Civil 02-1788 (ADC), 2006 WL 8449986, at *15 (D.P.R. June 19, 2006) (where RICO complaint is

---

[5]  "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action."  *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citing *Iqbal*, 556 U.S. at 679); *Sanchez v. Pereira-Castillo*, 590 F.3d at 45.  Similarly, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" should not survive a motion to dismiss.  *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

[6]  Rule 9(b) provides, in pertinent part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

based on predicate acts of wire fraud, "the pleadings must meet both the heightened scrutiny applied to RICO claims and the Rule 9(b) particularity requirement.") (footnote omitted).[7]

## I.     THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF RICO

### A.     The RICO Claims Should Be Dismissed Because They Do Not Allege Injury From the Investment of Racketeering Income into an Enterprise

Plaintiffs' RICO claims are fatally flawed because the Complaint does not and cannot allege an injury from the investment of racketeering income that is distinct from an injury caused by the alleged predicate acts themselves, as required to state a claim brought under § 1962(a).  *See Roman Rivera v. Puerto Rico Elec. Power Auth.*, No. CV 11-2003(DRD), 2012 WL 13170557, at *5 (D.P.R. Sept. 25, 2012) ("Plaintiffs' injury flowing from the investment of the proceeds [defendant] received from the alleged mail and wire fraud must be distinct from the injury arising from the racketeering activity itself.").  *See also Compagnie De Reassance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995) ("[T]he plaintiff must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves.") (quoting *Lightening Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir. 1993)); *One World, LLC v. Manolakos*, No. 20-CV-11837-RWZ, 2022 WL 20595078, at *3 (D. Mass. May 12, 2022) (Section 1962(a) "require[s] that the alleged harm is 'beyond that resulting from the fraud which constituted the predicate act.'").

---

[7] Thus, in the RICO context, "Rule 9(b) calls for the complaint to 'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.' … The plaintiffs must also 'identify the purpose of the mailing within the defendant's fraudulent scheme.'"  *Alejandro-Martinez v. Ortiz-Vazquez*, Civil No. 10-1541(CCC), 2011 WL 4807714, at *3 (D.P.R. Oct. 11, 2011) (cleaned up).  *See Puerto Rico Medical Emergency Group, Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 118 F. Supp.3d 447, 457 (D.P.R. 2015) (dismissing RICO claim which failed to allege the "specific dates" of the mails and wires, the "specific persons" who sent them and the "places from which or to where the invoices were sent.").

Thus, in order to state a claim under § 1962(a), Plaintiffs must plead that they were "[1] harmed *by reason of* … [Defendants'] *use or investment* of income from [2] a pattern [3] of racketeering activity [4] in some enterprise … [5] engaged in interstate or foreign commerce." *Roman Rivera*, 2012 WL 13170557, at *5 (emphasis added) (quoting *Compagnie De Reassance D'Ile de france*, 57 F.3d at 91). *See also Ouaknine v. MacFarlane*, 897 F.2d 75,77 (2d Cir. 1990) (a claim brought pursuant to § 1962(a) is "premised on injury by means of defendants' investment of racketeering income."). Here, the Complaint founders on the first element because Plaintiffs have alleged no facts asserting that they were harmed by reason of Fahad's investment of the proceeds received from the alleged racketeering activity.

In this case, the purported damages flow solely from the would-be predicate acts, not from the investment of racketeering income into an enterprise. This is clear from the face of the Complaint and is borne out by the RICO Case Statement. *See* RICO Case Statement, Section 9, at p. 18. For example, Count I alleges that the damages were caused by "the operation of the association in fact enterprise through a pattern of racketeering activity." Compl. ¶ 166. No distinct harm to Plaintiffs flowing from the investment of the proceeds of the racketeering activity is pled, as the Complaint merely alleges in conclusory fashion that Defendants "have used and invested the income they derived through the pattern of racketeering activity targeting Plaintiffs to further their operations, in violation of 18 U.S.C. §1962(a)." Compl. ¶ 169. The allegations of Counts II through V follow the same formulaic language.[8] Plaintiffs' inability to plausibly allege any

---

[8] *See* Count II, Compl. ¶ 174 (alleging damage caused by the predicate acts of wire fraud, not by reason of investment), and ¶ 176 (merely alleging reinvestment of the racketeering income back into the Defendants' enterprise). *See* Count III, Compl. ¶ 181 (alleging the "pattern of racketeering activity… caus[ed] damages," not by reason of investment), and ¶ 183 (merely alleging reinvestment of the racketeering income back into the enterprise). *See* Count IV, Compl. ¶ 188 (alleging Defendants "furthered the financial interests of the enterprise through a pattern of racketeering activity … thereby causing damages to Plaintiff Paulson PRV," not that the

additional or distinct harm that was actually caused by reason of an investment in an enterprise is fatal to their RICO claims.[9]

Accordingly, none of the five RICO Counts properly alleges that Plaintiffs were injured by means of Defendants' investment of racketeering income in violation of § 1962(a), and this irreparable defect necessitates dismissal of the Complaint's RICO claims.[10]

_____

investment caused damage), and ¶ 190 (merely alleging that Defendants "used and invested the income they derived through the pattern of racketeering activity targeting plaintiffs to further their operations …."). *See* Count V, Compl. ¶ 195 (alleging the pattern of racketeering activity… "causing damages to Plaintiff …."), and ¶ 197 (merely alleging that Defendants "invested the income they received through the pattern of racketeering activity targeting Plaintiff to further their operations ….").

[9] Moreover, the law is clear that the reinvestment of the proceeds of racketeering back into the same enterprise does not confer the requisite standing for a § 1962(a) claim. *See, e.g., In re Tyco Int'l., Ltd.*, No. MDL 02-1335-B, 2007 WL 1703023, at *18 (D.N.H. 2007 ) (dismissing claim on basis that "[c]ourts are generally in agreement that the 'mere reinvestment of the racketeering proceeds into a business activity is not sufficient for §1962(a) standing'") (citations omitted); *see also Allstate Ins. Co. v. Seigel*, 312 F. Supp. 260, 271 (D. Conn. 2004) ("[W]hen racketeering proceeds are merely reinvested back into the same RICO enterprise, the plaintiff's injuries derive proximately not from the investment but rather from the predicate acts themselves …."); *Falise v. American Tobacco Co.*, 94 F. Supp.2d 316, 349 (E.D.N.Y. 2000); *Kaczmarek v. Inter. Bus. Machs. Corp.*, 30 F. Supp.2d 626, 628 (S.D.N.Y. 1998).

[10] *See Roman Rivera*, 2012 WL 13170557, at *5, (dismissing § 1962(a) claim with prejudice because "[p]laintiff's purported injury flowing from [the enterprise's] investment of racketeering income is indistinct from Plaintiff's injury flowing from Defendants' alleged racketeering activity: both the alleged mail and wire fraud and the investment of income derived from the alleged mail and wire fraud harmed plaintiffs by causing them to overpay for their energy bills."); *Molina v. Union Independiente Autentica de LA AAA*, 750 F. Supp.2d 417, 422 (D.P.R. 2010) (dismissing § 1962(a) claim because "Plaintiff has alleged injuries caused by defendant's 'misappropriation of funds'; however, '[t]he subsequent use or investment of these funds has not resulted in any injury distinct from that caused by the predicate acts averred by Plaintiff."); *Fabrica de Muebles J.J. Alvarez, Inc. v. Westernbank de Puerto Rico*, No. 09-1558, 2009 WL 4730776, at *5 (D.P.R. Dec. 4, 2009) (dismissing § 1962(a) claim where plaintiff failed to allege an injury caused by the use or investment of funds). *See also Compagnie De Reassance D'Ile de France*, 57 F.3d at 91 (dismissing RICO claims because "[e]ven assuming that [plaintiffs] had been defrauded through the use of the mails or international wires, … that alone is not enough to show that they were harmed additionally by [defendant's] use or investment of the proceeds of that fraud to establish or operate [the enterprise].").

### B.   The Complaint Does Not Allege a Pattern of Racketeering Activity

In *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 15 (1st Cir. 2000), the First Circuit elaborated on the element of a "pattern of racketeering activity" for purposes of pleading a RICO violation.  The Court explained that although showing two predicate acts is the minimum statutory requirement, "case law establishes that this is not sufficient to prove a 'pattern'—the plaintiff also must demonstrate that the 'predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *Efron*, 223 F.3d at 15 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co*., 492 U.S. 229, 239 (1989)).

As set forth in *Efron*, relying on *H.J. Inc*., continuity is "'both a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *Id*. at 16 (quoting *H.J. Inc*., 492 U.S. at 241). Thus, "[b]ecause RICO was intended by Congress to apply only to enduring criminal conduct, '[p]redicate acts extending over a few weeks or months … do not satisfy this requirement.'"  *Id*. at 15 (quoting *Feinstein v. Resolution Trust Corp*., 942 F.2d at 45).[11]  The Court in *Efron* further observed that in circumstances "where the racketeering activity exceeds in duration the 'few weeks or months' that the Supreme Court in *H.J. Inc*. deemed inadequate, but is neither so extensive in reach nor so far beyond the minimum time period that common sense compels a conclusion of continuity, the fact that a defendant has been involved in only one scheme with a singular objective and a closed group of targeted victims also strikes us as 'highly relevant.'"  *Id*. at 18 (citation omitted).

---

[11]   The Court in *Efron* cited *United States v. Pelullo*, 964 F.2d 193, 209 (3d Cir. 1992) ("most courts that have found continuity in a closed period did so in cases involving periods of several years") and *Hindes v. Castle*, 937 F.2d 868, 875 (3d Cir. 1991) (collecting cases ranging from a period of four and one-half to 17 years).  *Efron*, 223 F.3d at 18.

Here, Count I of the Complaint is pled as a separate, independent RICO claim based on an alleged pattern of racketeering activity consisting of three predicate acts of wire fraud under 18 U.S.C. § 1343, allegedly committed by Fahad and Glenda operating as an "association-in-fact" enterprise.  The predicate acts alleged consist of an email sent by Fahad on April 5, 2021 and a second email sent by Fahad on June 3, 2023, followed by an email sent by Glenda one month later on July 14, 2023.  *See* RICO Case Statement, Section 5, at p. 7 (COUNT I a.).  The rationale of *Efron* makes crystal clear that these three alleged acts of wire fraud do not suffice for purposes of pleading the separate RICO violation asserted in Count I, which, as set forth in the RICO Case Statement, allegedly involved a single scheme, a singular objective, and "a closed group of targeted victims," *i.e.*, Plaintiffs Duo Condado JV Holdings LLC and Bahia Beach Holding Company LLC. *See Efron*, 223 F.3d at 20 (dismissing Complaint that alleged 17 predicate acts of wire and mail fraud over a span of 21 months and noting that "[v]irtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are 'related' by purpose and spread over a period of at least several months.").[12]

For the same reasons, Count V of the Complaint, alleging a separate RICO violation based on a pattern of racketeering activity consisting of two predicate acts of wire fraud, *i.e.*, two emails sent by Fahad less than a month apart, is per se insufficient to establish a "pattern" for purposes of

---

[12]  *Efron* has been followed in subsequent decisions by the First Circuit and district courts within the First Circuit.  *See, e.g., Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 528-30 (1st Cir. 2015); *Giuliano v. Fulton*, 399 F.3d 381, 390 (1st Cir. 2005) (finding "commission of 16 predicate acts over a six-month period is inadequate to establish a closed-ended pattern of racketeering activity."); *Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 106 (1st Cir. 2002) (21-month scheme involving mail fraud was not actionable under RICO); *Puerto Rico Clean Energy Corp. v. Hatton-Gotay*, 115 F. Supp.3d 288, 293-94 (D.P.R. 2015) (12 predicate acts in nine-year period did not sufficiently allege a pattern of racketeering activity).

pleading a RICO violation by Fahad, Saira and Nerissa allegedly operating as an "association-in-fact" enterprise.  *See* RICO Case Statement, Section 5, at pp. 14-15 (COUNT V a.)

    C.    **The Complaint Does Not Properly Allege Any Predicate Acts**

The Complaint also fails to satisfy the third element of a claim under § 1962(a) because it does not allege cognizable "predicate acts" constituting racketeering activity.  The RICO statute defines racketeering activity to mean violations of the "specified" federal and state laws enumerated in 18 U.S.C. § 1961(1).  *See Efron*, 223 F.3d at 15.  *See also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) ("The acts of racketeering activity that constitute the pattern must be among the various criminal offenses listed in § 1961(1) ....").  Thus, only alleged violations of those specifically enumerated predicate acts constitute "racketeering activity" for purposes of stating a violation of § 1962(a).

    1.    *Embezzlement Is Not a Predicate Act*

Count III of the Complaint rests entirely on allegations of "embezzlement of funds" in purported violation of Article 182 of the Puerto Rico Penal Code.  *See* RICO Case Statement, Section 5, at pp. 10-12 (COUNT III a.).  Such alleged acts of "embezzlement," particularly the type of misuse of corporate perquisites alleged here, is not a predicate act for purposes of pleading a RICO violation.  The crime of embezzlement is conspicuously absent from the list of specified predicate acts set forth in § 1961(1), and the case law makes clear that "embezzlement" in violation of the Puerto Rico Penal Code does not qualify as a predicate act (as opposed to embezzlement from a pension fund (18 U.S.C. § 664) or relating to union funds (29 U.S.C. § 501(c)), which are specified federal law offenses).[13]

---

[13] *See Fuce v. West*, Civil No. 12–0874, 2012 WL 3046235, at *3 (E.D. Pa. July 26, 2012) ("State-law embezzlement, which is a form of theft, is not a predicate offense because it is not listed in § 1961(1)"); *see also Annulli v. Panikkar*, 200 F.3d 189, 199-200 (3d Cir. 1999), *overruled on other*

Accordingly, the Complaint's reliance on embezzlement to satisfy the requirement of pleading two or more predicate acts is completely misplaced.  Count III of the Complaint should therefore be dismissed for failure to allege any predicate offense, as alleged misuse of a corporate expense account does not constitute racketeering activity.

### 2.    *The Allegations of Extortion Fail to Plead a Predicate Act*

Count II of the Complaint is based on the alleged commission of predicate acts of "extortion" in connection with alleged "insurance scams."  In particular, Plaintiffs allege that Fahad and Amir engaged in "attempted extortion" or "extortion" of three unnamed local insurance brokers, identified only as Insurance Broker 1, Insurance Broker 2, and Insurance Broker 3, based on allegedly conditioning engagement of the insurance broker on retaining Amir's company as a consultant or agreeing to share commissions with Amir disguised as "consulting fees."  *See* RICO Case Statement, Section 5, at pp. 8-*9* (COUNT II a.).

Plaintiffs' RICO claim based on alleged acts of extortion fails for the separate reason that Plaintiffs are unable to plead a violation of the Hobbs Act, codified at 18 U.S.C. § 1951(b)(2), the predicate offense asserted in Count II.  *See United States v. Munoz-Martinez*, 79 F.4th 44, 53 (1st Cir. 2023) (explaining that the Hobbs Act defines extortion as "'the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right'") (citations omitted).  There is nothing in the Complaint that indicates that Plaintiffs were directly harmed by such allegedly extortionate demands.  *See Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 13 (1st Cir. 2007) ("To succeed on their RICO claim based

---

*grounds by Rotella v. Wood*, 528 U.S. 549 (2000) (the state law crime of theft is not a predicate offense under § 1961(1)); *Toms v. Pizzo*, 4 F. Supp.2d 178, 183 (W.D.N.Y. 1998) (embezzlement is only a predicate offense when it violates 29 U.S.C. § 501(c) or 18 U.S.C. § 664), *aff'd*, 172 F.3d 38, at *2 (2d Cir. 1998).

on the alleged Hobbs Act violations, however, the plaintiffs must show not only that extortion occurred, but that 'they suffered a direct injury as a result of [it].'") (quoting *George Lussier Enters., Inc. v. Subaru of New Eng., Inc.*, 393 F.3d 36, 51 (1st Cir. 2004); *Orocovis Petroleum Corp. v. Puerto Rico Ports Authority*, Civil No. 08-2359 (GAG/BJM), 2010 WL 3420004, at *5 (D.P.R. Aug. 2, 2010) (dismissing RICO claim because "the complaint not only fails to allege specific incidents of extortion, but also fails to allege how [plaintiff's] injuries were caused by extortion."). *See also Int'l Longshoreman's Ass'n*, 518 F. Supp.2d 422, 483 (E.D.N.Y. 2007) ("the Government cites no authority for the proposition that extortion in violation of the Hobbs Act may be pleaded without even identifying the victims of the alleged extortion and indicating that some use or threat of force, however indirect, was used to compel their consent to part with property.").

Thus, Plaintiffs' allegations with respect to "extortion" do not state a predicate act for purposes of Count II.  The only two remaining predicate acts pled for purposes of Count II, consisting of two acts of alleged wire fraud, an email sent by Fahad on June 3, 2023 and an email sent by Amir one month later on July 7, 2023, are patently insufficient to establish a "pattern" of racketeering activity, requiring dismissal of Count II.  *See* RICO Case Statement, Section 5, at p. 9 (COUNT II a.v.).

### 3.     *The Claim of Fraud in the Purchase of Shares in Innoveo Is Not Actionable*

Count IV of the Complaint should also be dismissed because the allegations of fraud in connection with Paulson's investment in Innoveo fails to state a claim for wire fraud as a predicate act for purposes of pleading racketeering activity.

The Complaint does not allege an actionable claim because it fails to properly plead that the unspecified investor suffered a loss, *i.e.*, damages.  The Complaint merely alleges that the investment was made in reliance on inflated financial information; however, Paulson, or the entity

that actually invested, obtained ownership of shares of Innoveo stock pursuant to the investment documents referenced in the Complaint, and continues to hold those shares. The Complaint contains no allegations concerning a diminution of their value, let alone diminution attributable to any specific, knowingly false representations by Defendants. *See, e.g., Hill v. Gozani*, 638 F.3d 40, 53-54 (1st Cir. 2011) (anti-fraud laws are not broad insurance against market losses, but exist to protect against economic losses actually caused by the alleged misrepresentations) (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005)). *See also Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (explaining that to establish that an injury came about "by reason of" a RICO violation, a plaintiff must show that a predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well") (citing *Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258, 268 (1992)).[14]

In sum, Plaintiff has not alleged any actual damage caused by the alleged predicate acts of wire fraud.[15] Furthermore, the allegations of wire fraud for purposes of pleading Count IV, consisting of two emails sent by Fahad two days apart, are by definition insufficient to plead a

---

[14] Count IV should also be dismissed because it improperly attempts to convert a claim for breach of an investment contract, common law fraud, or fraud in connection with the purchase of securities into a predicate act of wire fraud. RICO's civil damages provision, 18 U.S.C. §1964(c), excludes any claim which could be pled as securities fraud. *See Calderon Serra v. Banco Santander Puerto Rico*, 747 F.3d 1, 4 (1st Cir. 2014) ("Congress meant not only to 'eliminate securities fraud as a predicate offense in a civil RICO action, but also to prevent a plaintiff from pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.'").

[15] As detailed below, wire fraud allegations, which also form the basis of the common law fraud claims, are not pled with the particularity required by Rule 9(b). In addition, Plaintiffs' allegations of wire fraud also require that the wires be interstate. The Complaint does not plead the state from which the specific wires were sent or that they crossed state lines, as required by Rule 9(b). *See, e.g., Norfe Group Corp. v. R.Y. Espinosa, Inc.*, Civil No. 19-1897(BJM), 2021 WL 5235119, at *5 (D.P.R. Nov. 9, 2021); *Hernandez v. Ballesteros*, 333 F. Supp.2d 6, 12 (D.P.R. 2004) (dismissing RICO claim where the plaintiff failed to specify that the communications went outside Puerto Rico).

"pattern" of racketeering activity.  *See* RICO Case Statement, Section 5, at p. 13 (COUNT IV a.i.).
Accordingly, Count IV should be dismissed on these grounds as well.

    **D.**       **The Complaint Fails to Allege the Existence of an "Enterprise"**

    Plaintiffs' RICO claims under § 1962(a) should also be dismissed for failure to plead the
requisite "enterprise."  In *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 (1994), the
Supreme Court drew a clear-cut distinction between the "enterprise" for purposes of subsections
(a) and (b) as opposed to subsection (c).  Thus, the "enterprise" referred to in subsections (a) and
(b) "is the *victim* of unlawful activity and may very well be a 'profit-seeking' entity that represents
a property interest and may be acquired."  *Id.* (emphasis added).  "By contrast, the 'enterprise' in
subsection (c) connotes generally the vehicle through which the unlawful pattern of racketeering
is committed, rather than the victim of that activity."[16]  *Id.*

    Here, Plaintiffs have alleged various "association-in-fact enterprises" that allegedly
perpetrated the racketeering activity through their members rather than an investment in a separate,
legitimate enterprise that was the victim of that alleged activity.[17]  *See* RICO Case Statement,
Section 8, at p. 18 ("The enterprises alleged in the Complaint are association-in-fact enterprises
led by Fahad … [that] existed for the sole purpose of using Fahad's access to the Paulson Entities
to enrich the members of the enterprise through patterns of racketeering activity ….").
Accordingly, Plaintiffs have conflated the "enterprise" as connoted in subsection (c) with the

---

[16]  *See also In re Tether & Bitfinex Crypto Asset Litig.,* 576 F. Supp.3d 55, 124–25 (S.D.N.Y.
2021)*; Tooker v. Guerrera*, No. 15 Civ. 2430 (JS) (ARL), 2017 WL 3475994, at *7 (E.D.N.Y.
Aug. 11, 2017) ("Unlike Section 1962(c), the Section 1962(a) and (b) 'enterprise' is 'not intended
to be the vehicle through which a pattern of racketeering is undertaken, but a separate, legitimate
entity purchased through moneys raised through racketeering.'") (citing *USA Certified Merchants,
LLC v. Koebel*, 262 F. Supp.2d 319, 330–31 (S.D.N.Y. 2003)).

[17]  The Complaint also improperly pleads each of the "association-in-fact" enterprises in entirely
conclusory terms.  *See, e.g.,* Compl. ¶ 168.  *See Orocovis Petroleum,* 2010 WL 3420004, at *5.

"enterprise" as referenced in subsection (a), so as to require dismissal of their RICO claims for failure to plead an "enterprise" under § 1962(a).[18]

In this case, the Complaint is doubly deficient because the various association-in-fact enterprises, which are pled in conclusory terms, were not victims of the fraud and are alleged to have existed for the "sole purpose" of engaging in the alleged racketeering activity. Dismissal of Plaintiffs' claims under § 1962(a) is therefore mandated on these grounds as well.

### E. Plaintiffs' Conspiracy Claims Under § 1962(d) Should Be Dismissed and the Court Should Decline to Exercise Supplemental Jurisdiction

Plaintiffs' claims pursuant to § 1962(d), alleging that Defendants conspired to violate § 1962(a), must also be dismissed based on the Complaint's failure to state a substantive RICO violation of subsection (a). *See Efron*, 223 F.3d at 21 ("if the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails") (citations omitted). *See also Lerner v. Colman*, 485 F. Supp.3d 319, 332 (D. Mass. 2020); *Caro-Bonet v. Lotus Mgmt. LLC*, Civil No. 15-2106, 2018 WL 3629917, at *6 (D.P.R. July 27, 2018); *Hernandez v. Ballesteros*, 333 F. Supp.2d at 13.

Furthermore, because Plaintiffs' RICO claims lack an adequate substantive basis in law and should be dismissed with prejudice, the only remaining claims are local law claims.

---

[18] Similarly, Plaintiffs' RICO claims should be dismissed because the case law supports that the association must be "distinct" or "substantially different" from the commission of the alleged racketeering activity. *See Diaz v. Arencibia*, Civil No. 07-2097 (JAF), 2009 WL 1444274, at *3 (D.P.R. May 20, 2009) ("'The enterprise must be distinct from the pattern of racketeering activity' in that it must have a goal more enduring than the completion of the particular criminal acts comprising the RICO offense.") (quoting *United States v. Nascimento*, 491 F.3d 25, 32 (1st Cir. 2007)); *see also Orocovis Petroleum Corp.*, 2010 WL 3420004, at *4-5; *Miranda-Rodriguez v. Ponce Fed. Bank, F.S.B.*, 751 F. Supp. 18, 21 (D.P.R. 1990) ("term 'enterprise' must signify an association that is substantially different from the acts which form the 'pattern of racketeering activity'" and dismissing RICO claim because "[g]iven the facts as pleaded by plaintiffs, the alleged concerted activities of the defendants appear to have no purpose distinct from the alleged obstruction of the investigation.") (citation omitted).

Accordingly, at this stage the Court should decline to exercise its supplemental jurisdiction and dismiss the local law claims without prejudice pursuant to 28 U.S.C. § 1367(c) and the rule of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  *See, e.g., Puerto Rico Clean Energy Corp. v. Hatton-Gotay*, 115 F. Supp.3d at 296; *Trinidad v. IDI Holdings PR, Inc*., 708 F. Supp.2d 137, 147 (D.P.R. 2005).  In any event, the local law claims should be dismissed for the reasons set forth below.

## II.   EACH OF THE NON-RICO CLAIMS SHOULD BE DISMISSED

Each of the remaining, non-RICO claims asserted against Fahad and Thinking Ahead are improperly or insufficiently pleaded and should be dismissed.  The Complaint fails to alert the Defendants as to the specific wrongdoing they are charged with and to identify the causal nexus between the alleged misconduct and the harm, if any, suffered by each of the named Plaintiffs.  Thus, the Complaint fails to meet even the basic requirements of Fed. R. Civ. P. 8 and should be dismissed pursuant to Rule 12(b)(6).

### A.   The Complaint Runs Afoul of Rule 8's Basic Requirements and Fails to Specify the Injured Parties

The Complaint fails to provide Defendants with the requisite notice.  Despite its 342 paragraphs in over 73 pages, the Complaint and its allegations are impermissibly vague.[19]  The caption of the Complaint lists six specific Plaintiffs, which the Complaint defines as the "Paulson Entities."  Elsewhere, however, the Complaint defines a completely different set of entities as the "Paulson Entities," namely, Ocean Drive Development, LLC; Condado Duo la Concha Hotel Tower SPV, LLC; Earle HC, LLC; and Bahia Beach CH, Development, LLC.  Compl. ¶¶ 36, 39.  None of these "Paulson Entities" are Plaintiffs in this case and the relationship between those

---

[19] This undoubtedly reflects the enormous complexity of Paulson's tangled web of companies used to conduct his business affairs.

entities and the actual Plaintiffs is never articulated.[20]   Moreover, throughout the Complaint, entities are haphazardly and imprecisely referred to as "Paulson's companies."   The Complaint also obscures the nature of Fahad's relationship with those parties, further undermining Plaintiffs' ability to state a claim upon which relief can be granted.   Rule 8 requires that a complaint "must at least set forth minimal facts as to who did what *to whom*, when, where and why."   *Ruiz-Rosa v. Rullan*, 485 F.3d 150, 154 (1st Cir. 2007) (emphasis added) (citation omitted).   Here, the "to whom" aspect is notably missing.

### B.   The Complaint Fails to Sufficiently Allege Standing

In failing to plead who was injured by the alleged conduct, the Complaint fails to adequately plead standing and should therefore be dismissed.   A plaintiff "bears the burden of pleading facts necessary to demonstrate standing," and the same plausibility standard applicable under Rule 12(b)(6) applies to standing determinations at the pleading stage.   *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730-31 (1st Cir. 2016) (citations omitted).   For example, the Complaint alleges a "scheme to enrich Glenda through GGSG, the shell company, at Paulson's expense," but "Paulson" is not a plaintiff in this case.   Compl. p. 13.   Inherent in the concept of standing is that a litigant may not raise "another person's legal rights."   *Allen v. Wright*, 468 U.S. 737, 751 (1984) (abrogated on other grounds).   Whether referring to Paulson, two distinct sets of Paulson entities, *or the Paulson companies, the Complaint falls short of the basic task of*

---

[20] The Complaint alleges that PRV is the sole member of each of the other Plaintiffs, *i.e.*, it is the parent and owner of those subsidiaries and PRV itself is merely a holding company.   Except for SJ Beach PR, LLC, each of the other Plaintiffs also refers to itself as a "holding company," *i.e*, it is a parent company of other subsidiaries.   This is significant because injury to a subsidiary corporation does not confer standing on the parent.   *See, e.g.*, *American Towers, Inc. v. Town of Falmouth, Maine*, 217 F. Supp.2d 154, 157 (D. Maine 2002).   Moreover, the only concrete allegation describing Fahad's relationship with Paulson's business refers to a contract between him and several other entities, none of which are actually the Plaintiffs in this action.   Compl. ¶ 36.

*identifying who did what to whom* and in turn fails to allege who actually has the right to seek relief.

The First Circuit has explained that standing "reflects prudential and constitutional limitations upon the exercise of federal jurisdiction. The constitutional limitations derive directly from Article III and require a plaintiff to allege that as a result of the defendant's actions he has suffered a distinct and palpable injury." *Conservation Law Foundation of New England, Inc. v. Reilly*, 950 F.2d 38, 40 (1st Cir. 1991) (cleaned up).[21]

Standing entails three elements: (1) an injury in fact which is "concrete and particularized," (2) the injury is "fairly traceable to the challenged action" (causation), and (3) is likely to be redressed by a favorable decision. *Dantzler*, 958 F.3d at 47. Here, the Complaint fails to allege a concrete and "particularized injury" and lacks the traceability element. The particularization element "necessitates that a plaintiff has been affected in a personal and individual way by the injurious conduct." *Hochendoner*, 823 F.3d at 731 (citations omitted). It "reflects the commonsense notion that the party asserting standing must not only allege injurious conduct attributable to the defendant but also must allege that he, himself, is among the persons injured by that conduct." *Id*. at 731-732 (citation omitted). That necessary and commonsense link, between the alleged injurious conduct and the actual Plaintiffs, is absent from the Complaint.

Thus, the Complaint fails to allege the most basic connection between the underlying facts alleged and the Plaintiffs' rights to relief. Each actual Plaintiff is described either as "engaged in

---

[21] More recently, the First Circuit has explained that "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to hear actual cases or controversies," and that "[t]o assure respect for this limitation, plaintiffs must establish that they have standing to sue." *Dantzler, Inc. v. Empresas Berrios Inventory and Operations, Inc.*, 958 F.3d 38, 46 (1st Cir. 2020) (citations and internal quotations omitted).

the hotel industry and in real estate development and investments" or the "commercial real estate industry." Compl. ¶¶ 6-11. Later, the Complaint appears to describe certain other entities and actual hotel properties, but there is no explanation of the relationship, if any, between these entities (confusingly using the duplicative definition the "Paulson Entities") and the actual Plaintiffs asserting claims. Accordingly, the Complaint fails to raise a plausible inference that the named Plaintiffs have standing, or any right to relief whatsoever, necessitating that each of the non-RICO claims (and RICO claims as well) should be dismissed. Aside from this overall failure to plead standing, each of the remaining claims suffers from other fatal defects discussed below.

### C.   Each of the Fraud Claims Is Insufficient Pursuant to Rule 9(b)

It is well settled that Rule 9(b) requires that allegations of fraud must be stated with particularity, *i.e.*, the complaint must specify the "time, place, and content of an alleged false representation." *Doyle*, 103 F.3d at 194 (citation omitted). "Conclusory allegations and references to 'plans and schemes' are not sufficient." *U.S. ex. Rel. Kelly v. Novartis Pharm. Corp.*, 827 F.3d 5, 13 (1st Cir. 2016). Each of Counts VI, VII, VIII, and IX fail to meet this standard.

With respect to Count VI, the paragraph 70 of the Complaint identifies three emails, but there is no factual support alleged for how the furniture prices were allegedly "fraudulently inflated." Indeed, the Complaint alleges only that the Paulson Entities "paid GGSG approximately $3.2 million dollars for furniture," without any attempt to identify which portion of that $3.2 million represents an allegedly fraudulent markup. Compl. ¶ 205.

Count VII is similarly deficient. Paragraph 109 of the Complaint merely states that "Fahad and/or Amir knowingly and willfully structured the premium costs and/or the insurance program for PRV in a fraudulent manner to earn higher commissions," the very kind of vague, conclusory allegation prohibited by *Novartis*. Also in paragraph 108, the Complaint alleges that "Paulson

PRV paid over $48,000,000.00 in insurance premiums," without specifying which portion of that was paid due to alleged fraud.  Then, in seeking damages, the Complaint uses that same $48,000,000 figure, but divides it into half as compensatory damages and half as punitive, and without alleging that $24,000,000 of the amount paid was due to fraud.  Compl. ¶ 213.  Thus, the Complaint makes demands without pleading any factual underpinning or legal basis.

Count VIII is more of the same lack of required specificity.  The Complaint simply refers to "artificially inflated financials."  Compl. ¶ 138.  There is no detail provided of what was actually inflated.  Paragraph 142 of the Complaint refers to two emails but does not identify what, if anything, in those communications was false.[22]

Count IX is also defective and clearly seems to have been inserted for the sole purpose of harassing another one of Fahad's family members.  Paragraph 223 of the Complaint merely alleges in conclusory fashion that "Fahad and Saira materially misrepresented the true cost and value of the goods sold to the Paulson Entities in order to pocket greater commission payments."  For damages, the Complaint again seeks double the amount of money actually paid for goods.  Compl. ¶ 224.  Accordingly, each of the fraud claims should be dismissed pursuant to Rule 12(b)(6) for failure to satisfy the heightened pleading requirement of Rule 9(b).

### D. Plaintiffs' Claim for Breach of Fiduciary Duty Fails

The claim for breach of fiduciary duty is specifically asserted by PRV.  The Complaint, however, completely fails to allege the nature of Fahad's relationship with PRV, what duty he allegedly owed to it, and what conduct allegedly damaged it.  Rather, the allegations concerning breach of fiduciary duty are nothing more than the sort of bare legal conclusions which warrant

---

[22]  As noted above, the claim regarding Paulson's investment in Innoveo suffers from another substantial defect in that no damage is alleged, *i.e.*, Paulson still owns the shares of Innoveo.

dismissal.  For example, in paragraph 235 of the Complaint, it is alleged that "due to the nature of his position at the Paulson Entities, Fahad owed the Paulson Entities a duty of loyalty."  The Complaint goes on to allege that all of the previously alleged acts violated that duty owed to the "Paulson Entities."  But the Complaint does not allege any relationship between PRV and Fahad.  Paragraph 7 alleges that PRV is engaged in the hotel industry and in real estate development and investments and is a citizen of Delaware and New York, but it makes no connection between PRV and Fahad.[23]

The remainder of the claim for breach of fiduciary duty references the litany of alleged misconduct by Fahad and concludes that such conduct violated the fiduciary duty he owed to the "Paulson Entities."   This is the quintessential "legal conclusions couched as fact" that is insufficient to overcome a motion to dismiss pursuant to Rule 12(b)(6).  *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).  Focusing only on the factual allegations of the Complaint, and disregarding the legal conclusions, as required by *Iqbal* and *Twombly*, there are no facts pled supporting the allegations that Fahad owed any duty to PRV at all.  Accordingly, this claim should be dismissed pursuant to Rule 12(b)(6).

### E.   Plaintiffs' Claim for Damages Under Puerto Rico's General Tort Statute Fails

Puerto Rico's General Tort Statute requires that a plaintiff establish "a sufficient causal nexus between the injury and the defendant's act or omission (in other words, proximate cause)."

---

[23] The Complaint describes Fahad as being a "junior analyst at Paulson & Co. Inc." and in the very next paragraph as "working for Paulson directly."  Compl. ¶ 26.  In the next paragraph after that, Fahad is described as "tasked with assisting the senior managers of these investment [in Puerto Rico].  Compl. ¶ 28.  No connection or duty is alleged running from Fahad to PRV.  Subsequently, Fahad is described as having been designated by Paulson "to oversee all of Paulson's Puerto Rico-based investments…"  Compl. ¶ 36.  Again, no connection is drawn between these investments and PRV, nor is any fiduciary duty running from Fahad to PRV alleged as a factual matter.

*Mardones v. Levimar Guesthouse, Inc.*, No. CV 22-1431 (MEL), 2023 WL 7167598, at *2 (D.P.R. Oct. 30, 2023) (citing *Vazquez Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007)).  Here, Plaintiffs fail to allege any such causal nexus between the alleged misconduct and an injury suffered by the named Plaintiffs.  As set forth above, even if the alleged conduct indirectly injured certain Plaintiffs as a result of their interest in a related corporate entity, that connection and indirect injury would still be insufficient.  *See* note 20 *supra*.

### F. Plaintiffs' Claim for Unjust Enrichment Fails

Plaintiffs' unjust enrichment claim fails for reasons similar to those stated above.  First, Plaintiffs have not alleged a *particularized* injury to themselves.  Second, the Complaint fails to allege significant elements of a claim for unjust enrichment under Puerto Rico law.  Specifically, the Complaint fails to allege a "correlative loss" to the enrichment, and a "nexus between loss and enrichment."  *Montalvo v. LT's Benjamin Records, Inc.*, 56 F. Supp.3d 121, 136 (D.P.R. 2014).  Accordingly, the Complaint does not plead that the alleged misconduct that supposedly enriched Fahad caused any loss to Plaintiffs, and the necessary nexus to the "correlative loss" is therefore missing.  Thus, the claim for unjust enrichment should be dismissed pursuant to Rule 12(b)(6).

### CONCLUSION

For all of the reasons set forth above, Defendants respectfully submit that the motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim should be granted in its entirety and the Complaint dismissed with prejudice.

**IT IS HEREBY CERTIFIED** that, on this date, the foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

Dated: January 18, 2024

Respectfully Submitted,

RUSSO PLLC
*/s/ Martin P. Russo*
Martin P. Russo (*pro hac vice*)
Robert Sidorsky (*pro hac vice*)
Daniel Branower (*pro hac vice*)
350 Fifth Avenue, Suite 7230
New York, New York 10118
(212) 363-2000
martin@russopllc.com

*/s/ Harold D. Vicente-Colón*
Harold D. Vicente-Colón
USDC -PR 211805

*/s/ Harold D. Vicente Gonzalez*
Harold D. Vicente Gonzalez
USDC-PR 117711
Vicente Law LLC
Capital Center Sur Ph1-1201
239 Arterial Hostos
Hato Rey
(787) 751-8000
hdvc@vclawpr.com

FOSTER P.C.
*/s/ Howard W. Foster*
Howard W. Foster, Esq. (*pro hac vice*)
155 North Wacker Drive, Suite 4250
Chicago, Illinois 60606
(312) 726-1600

*/s/ José A. Andréu-Fuentes*
José A. Andréu-Fuentes
USDC-PR 204409
Alfredo M. Umpierre-Solor
USDC-PR 226205
Andréu & Sagardia
261 Ave. Domenech
San Juan, PR 00918-3518
(787) 754-1777
jaf@andreu-sagardia.com

*Counsel for Defendants Fahad Ghaffar and Thinking Ahead LLC*

26