IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PAULSON PRV HOLDINGS LLC et al.            CASE NO. 23-cv-01521 SCC

    Plaintiff

                                CIVIL RICO

FAHAD GHAFFAR et al.

    Defendants

---

**Defendant Amir Ghaffar's Request for Dismissal of the RICO Complaint
For Failure to State a Claim Upon Which Relief Can be Granted,
*Fed.R.Civ.P. 12(b)(6)***

TO THE HONORABLE COURT:

COMES NOW, co-defendants Amir Ghaffar, Coverisq LLC and Tygate PTE Ltd., through undersigned counsel and most respectfully state and pray as follows:

## INTRODUCTION

Plaintiffs' RICO complaint is a 74-page diatribe of John Paulson's former business partner, Fahad Ghaffar. In an obvious attempt to wrestle Fahad's submission, the RICO complaint includes Fahad's wife, father-in-law, brother, sisters, and employees as co-defendants. The appearing co-defendants are Amir Ghaffar, Fahad's older brother, and Amir's corporations, Tygate PTE Ltd and Coverisq LLC. (will be collectively referred to as "Amir").

Amir possesses a vast experience in the financial and insurance services industry where he has worked since 1997 across 3 continents and regional businesses covering 21 countries across both developed and emerging markets, with a proven track record of building profitable businesses. He has extensive management experience and before coming to Puerto Rico worked

with and occupied high tier executive positions in some of the largest global financial institutions, including Chubb, AIG, Aon and MLC.

The federal allegations against Amir are contained in Counts II and IV of the RICO Complaint[1]. The sole complaining plaintiff against Amir, on both counts, is Paulson PRV Holdings LLC.

Count II of the RICO complaint alleges that Amir, individually and in conspiracy with Fahad and co-defendant Nerissa Aponte, designed and executed a "fraudulent scheme to obtain higher commission payouts for Coverisq by inflating the insurance premiums charged to Paulson PRV and misleading Paulson PRV into believing it was paying properly priced insurance premiums", *RICO Case Statement, prd docket 52, at page 10.* Paulson PRV asserts that this "fraudulent scheme" was accomplished by four separate acts of alleged extortion and attempted extortion against its former Insurance Brokers, who inexplicably remain unnamed, and two emails sent in June and July 2023 to Paulson, one by Fahad and the other by Amir, amounting to alleged mail fraud. Paulson PRV's claimed injury is having to pay, "since 2022…over $48,000,000 in insurance premiums and over $5 million dollars in commissions to Coverisq" *Complaint, prd docket 1, par. 108.* Paulson PRV alleges that "[t]he premiums [paid] were exponentially greater than the premiums paid prior to engaging Coverisq", <u>Id.</u>, without any further explanation or specification. Moreover, in the RICO Case Statement filed by plaintiffs in compliance with this Court's order, *prd docket 52,* Paulson PRV's claimed injury is limited to having to pay "approximately $24,000,000.00 in inflated premium costs", *RICO Case Statement, prd docket 52, at page 23*, also without any further elucidation.

---

[1] The other claims, Counts VII through XXI, are pendent jurisdiction Puerto Rico law claims. "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims." <u>Lambert v. Fiorentini, 949 F.3d 22, 29 (1st Cir. 2020)</u>

Count IV of the RICO complaint alleges that Amir, individually and in conspiracy with Fahad, defrauded "Paulson PRV of an approximately $12,197,885.00 investment in Innoveo" a company allegedly owned by Fahad and Amir, *RICO Case Statement, prd docket 52, at page 13.* Paulson PRV asserts that through emails sent during the investment process Amir misrepresented Innoveo's valuation and business to get a hold of its $12,197,885.99 investment, thus invoking wire fraud as the predicate act of the RICO claim. Although the complaint does not allege any loss of the investment, Paulson PRV's claimed injury is the totality of the investment.

Both counts against Amir should be dismissed under Fed. R. Civ. P 12(b)(6) for failing to state an actionable claim. Count II is based on mere speculation, lacks the required specificity for factual allegations of fraud and fails in the causation standard required for RICO civil actions. On the other hand, the allegations of Count IV formulate an undistinguished fraud in the sale of securities claim barred as a predicate act of a RICO claim by the Private Securities Litigation Reform Act (PSLRA).

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). While well-pleaded factual allegations are assumed to be true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This is true even when "plaintiffs attempt to camouflage conclusory statements as allegations of fact." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013).

"Plausible, of course, means something more than merely possible." Zell v. Ricci, 957 F.3d 1, 7 (1st Cir. 2020) (citing Schatz v. Republican State Leadership Comm., 669 F.3d 50,

55 (1ˢᵗ Cir. 2012)). Determining the existence of plausibility is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" <u>Wadsworth v. Maine School Administrative District 40/Regional School Unit 40</u>, 2:19-cv-00577-JAW, 2020 WL 6370725, at *8 (D.Me. October 29, 2020) (citing <u>Schatz</u>, 669 F.3d at 55). A plaintiff's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" <u>Maldonado-Concepcion v. Puerto Rico</u>, 683 F. Supp. 2d 174, 76 (D.P.R. 2010) (quoting <u>Twombly</u>, 550 U.S. at 555). And, while a district court must normally confine its analysis to the pleadings, on a motion to dismiss it may also consider "matters fairly incorporated within it and matters susceptible to judicial notice." <u>In re Colonial Mortgage Bankers Corp.</u>, 324 F.3d 12, 15 (1st Cir. 2003); <u>see also</u> Fed. R. Evid. 201.

In the context of civil RICO, the First Circuit has cautioned the need to take "particular care . . . to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants." <u>Miranda v. Ponce Fed. Bank</u>, 948 F.2d 41, 44 (1st Cir. 1991).

"Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. The very pendency of a RICO suit can be stigmatizing and its consummation can be costly; a prevailing plaintiff, for example, stands to receive treble damages and attorneys' fees. *See* <u>18 U.S.C. § 1964(c)</u>. For these reasons, it would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering. Hence, to avert dismissal under <u>Rule 12(b)(6)</u>, a civil RICO complaint must, at a bare minimum, state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged." <u>Id.</u>

## COUNT II – THE INSURANCE "FRAUDULENT SCHEME"

"[T]o state a civil RICO claim, a plaintiff must allege "a violation of section 1962" and an injury "by reason of" that violation. (…) The underlying section 1962 violation in turn requires demonstrating: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted). The statute separately defines "pattern of racketeering activity" to require "at least two acts of racketeering activity." 18 U.S.C. § 1961(5)." Lerner v. Colman, 26 F. 4th 71, 77 (1st Cir., 2022).

Paulson PRV alleges that a "fraudulent scheme" was devised by Fahad and Amir, in which Nerissa Aponte participated, to secure the insurance business of all the Paulson properties. The Paulson properties in Puerto Rico include "the Condado Vanderbilt Hotel …, La Concha Renaissance San Juan Resort …, and the St. Regis Bahia Beach Resort …; Ocean Drive Development, LLC; Condado Duo La Concha Hotel Tower SPV, LLC; Earle HC, LLC; and Bahia Beach CH, Development, LLC", *Complaint, prd docket 1, par. 36,* beach-front luxury properties which after Hurricanes Irma and Maria represented a particular challenge to insure. [2] According to the complaint, Amir conspired with Fahad to extort Paulson PRV's previous insurance brokers, simply identified as Insurance Brokers 1, 2 and 3, "all of which were well-established players in the Puerto Rico insurance industry, in order to secure Paulson PRV's insurance business for Amir's companies, Tygate and Coverisq. Similarly, the [two referenced] fraudulent mailings were sent in furtherance of the fraudulent scheme to obtain higher commission payouts for Coverisq by inflating the insurance premiums charged to Paulson PRV

[2] "After Hurricanes Irma and María hit Puerto Rico in September 2017, along with the natural disasters of the earthquake in Mexico, Hurricanes Harvey and Irma that principally affected the States of Texas and Florida, respectively, and the California wildfires, the property insurance sector was significantly impacted during [2018]". Office of the Commissioner of Insurance of Puerto Rico, Rule Number 84 of the Regulations of the Puerto Rico Insurance Code, *Section 4 – Statement of Need and Purpose*, January 2019.

and misleading Paulson PRV into believing it was paying properly priced insurance premiums",
*RICO Case Statement, prd docket 52, at p. 10.*

Paulson PRV's allegations fail for lack of specificity on several fronts and lack of
standing for failing to establish proximate cause.

Firstly, there is no description of the contents of the "fraudulent mailings" that were
supposedly sent in furtherance of the "fraudulent scheme". It is a basic tenet in federal
procedural law, *Fed. R. Civ. P. 9*, that mail fraud allegations require specificity. And, "[b]ecause
Plaintiffs accuse defendants of racketeering activity involving mail fraud in violation of 18
U.S.C. § 1341, they must also allege "(1) a scheme to defraud based on false pretenses; (2) the
defendant's knowing and willing participation in the scheme with the intent to defraud; and (3)
the use of interstate mail or wire communications in furtherance of that scheme." United States
v. Cheal, 389 F.3d 35, 41 (1st Cir. 2004)." Hamilton v. Partners Healthcare Sys., 209 F.Supp.
3d 379 (D.Mass. 2016); *see also,* Caro Bonet v. Lotus Management, 195 F. Supp 3d 428, 433
(D.P.R. 2016), all of which is lacking in Paulson PRV's complaint.

"RICO claims where the racketeering activity is mail or wire fraud are subject to a
heightened pleading standard. It is "well settled law in this circuit that RICO pleadings of mail
and wire fraud must satisfy the particularity requirements" of Federal Rule of Civil Procedure
9(b). *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997). Rule 9(b) requires a party
"alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or
mistake." Fed. R. Civ. P. 9(b). This heightened standard "is satisfied by an averment 'of the who,
what, where, and when of the allegedly false or fraudulent representation.'" *Rodi v. S. New
England Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004) (quoting *Alt. Sys. Concepts, Inc. v.
Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004))." Hamilton v. Partners Healthcare Sys., *supra.*

"**In a RICO wire or mail fraud case, '"the pleader is required to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud.'"** _Cordero-Hernandez v. Hernandez-Ballesteros_, 449 F.3d 240, 244 (1st Cir. 2006) (citations omitted). The particularity standard has three purposes: (1) to place defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of fraud allegations as a pretext for groundless fishing expeditions; and (3) to protect defendants from charges of fraud that may damage their reputations. _New England Data Servs., Inc. v. Becher_, 829 F.2d 286, 289 (1st Cir. 1987)." _Hamilton v. Partners Healthcare Sys._, _supra,_ emphasis supplied[3].

Paulson PRV's conclusory allegations that the two "fraudulent mailings" contained false information and "inflated costs of insurance", _Complaint, prd docket 1, at par. 112,_ are clearly insufficient to comply with the heighted pleading standard of RICO mail fraud allegations[4]. A reference to what was false and why is it false is the bare minimum allegation required to comply with the pleading standard.

---

[3] Glenda's dismissal argument regarding plaintiffs' failure to comply with the heightened pleading standard, is referenced and herein incorporated, _prd docket 61, ps. 13-15._

[4] Additionally, two fraudulent emails are not enough to establish the required racketeering pattern. "By statute, the "pattern" element requires a plaintiff to show at least two predicate acts of "racketeering activity," which is defined to include violations of specified federal laws, such as the mail and wire fraud statutes, _see_ 18 U.S.C. § 1961(1)(B), (5). Although showing two predicate acts is the only statutory requirement, case law establishes that this is not sufficient to prove a "pattern" - the plaintiff also must demonstrate that the "predicates are related, _and_ that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989)".  Efron v. Embassy Suites, 223 F.3rd 12, 15 (1st. Cir. 2000). Paulson PRV's failure to establish a proximate cause between his claimed injury and the alleged predicate acts of extortion and mail fraud, will be discussed in further detail. Glenda's dismissal argument regarding plaintiffs' failure to allege a pattern of racketeering activity, is referenced and herein incorporated, _prd docket 61, ps. 5-8._

Secondly, Paulson PRV's conclusory allegations of extortion are inadequate to state a RICO claim, for failing to establish a proximate causal link between the claimed (or still unidentified) injury and the alleged violation - investment of racketeering income.

Paulson PRV's claimed injury is having to pay insurance premiums which it categorizes as excessive, without any contextual explanation. Additionally, it may seem that Paulson PRV also claims as an injury the payment of commissions to Coverisq, *Complaint, prd docket 1, par. 108.* The insurance industry in Puerto Rico is highly regulated and the business is overseen and scrutinized by the Office of the Insurance Commissioner of Puerto Rico (OIC). "The insurance industry has historically been the subject of economic regulation by the several States, and the Commonwealth of Puerto Rico, even to the exclusion of insurer's insolvency proceedings from federal bankruptcy jurisdiction. For protection of the general welfare, the Commonwealth of Puerto Rico has, as have all of the States, enacted a comprehensive scheme to regulate the insurance industry, including the liquidation of insurers. In fact, the First Circuit has… acknowledged the deference given to the Commonwealth's interest in protecting the general welfare, as it has affirmed the Commonwealth's regulatory scheme for the liquidation of insolvent insurers", Boneta v. Fernandez, 950 F. Supp. 432, 435 (D.P.R., 1996).

Pursuant to the Puerto Rico Insurance Code and OIC's interpreting regulations, the insurance carrier determines the amount of the premium to be paid by the insured. And the commission payable to the insurance broker is determined and paid by the insurance carrier, in the percentage previously notified and published by the OIC. Therefore, neither the insurance

premium nor the insurance commission are controlled or affected by any action of the insurance broker[5].

Besides the obvious need to clarify how is it that the insurance premiums paid by Paulson PRV–48M or 24M, whichever – are excessive[6], or that the commissions paid to Amir were excessive or manipulated in any manner, plaintiffs' claim of injury requires an explanation as to how is it that Fahad and/or Amir, or any insurance broker for that matter, extorted or not, could change the insurance premiums or the commissions that are set and paid by the insurance carriers and overseen by the OIC[7].

Regardless, Paulson PRV's claim of injury – the payment of "excessive" insurance premiums and commissions - even taken at face value, does not explicate how it is causally related to the alleged violation – the use of racketeering income derived from an activity that cannot be construed as extortion, or attempted extortion.

"The [Hobbs Act] outlaws extortion or attempted extortion affecting interstate commerce, see, e.g., United States v. Capozzi, 347 F.3d 327, 335 (1st Cir. 2003), defining extortion as "the obtaining of property from another, with his consent, induced by wrongful use

---

[5] See, Article 9.062 of the Insurance Code, *26 L.P.R.A. § 949k*, (prescribing that insurance broker commissions shall be capped and shall not exceed those filed and previously approved by the Commissioner for the matching risk); Article 9.210, *26 L.P.R.A. § 951a* (establishing the independence between an insurance broker and an insurance carrier); Article 9.380, *26 L.P.R.A. § 952h(1),* (establishing that insurance premiums are paid to insurance carriers, not to insurance brokers, unless the insurance broker serves, through a signed and registered agreement, as fiduciary to the insurance carrier); Article 12.050, *26 L.P.R.A. § 1205(1)* (compelling insurance companies to register with the Commissioner all premiums and amendments thereto, before going to market in Puerto Rico).

[6] To establish the "excessiveness" of the insurance premiums a meek reference to the previous years' payments would not suffice. Paulson PRV needs to reference and explain the changes – or not – of the circumstances of the insurance market, as well as the number and valuation of the properties insured.

[7] It is important to note that the complaint does not allege that Amir violated any section of the Puerto Rico's Insurance Code.

of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). In this context, "fear" includes "economic fear," but only if the fear is independently shown to be "wrongful," because **"there is nothing inherently wrongful about the use of economic fear to obtain property," as opposed to the use of threatened force or violence to do so**. United States v. Sturm, 870 F.2d 769, 772-73 (1st Cir. 1989). For this reason, "economic fear is wrongful under the Hobbs Act only if the plaintiff had a pre-existing statutory right to be free from the defendant's demand" for the property. George Lussier Enters., Inc. v. Subaru of New Eng., Inc., 393 F.3d 36, 40 (1st Cir. 2004)." Sanchez v. Triple-S Management Corp, 492 F.3d 1, 12 (1st Cir. 2007), emphasis supplied. Basically, there is a difference between "lawful hard bargaining" and "wrongful economic fear" actionable as extortion. Paulson PRV complains about actions which, taken at face value, do not amount to extortion[8].

Nevertheless, Paulson PRV invokes Section 1962(a) and alleges that the RICO violation is the investment of income derived from racketeering activity, and 1962(d) - conspiracy. "A claim brought pursuant to Section 1962(a) is "premised on injury by means of [a] defendants' investment of racketeering income." Ouaknine v. MacFarlane, 897 F.2d 75, 77 (2d Cir. 1990). To state a claim under Section 1962(a), Plaintiffs must plead that they were **"[1] harmed by reason of . . . [Defendants'] use or investment of income from [2] a pattern [3] of racketeering activity [4] in some enterprise . . . [5] engaged in interstate or foreign commerce."** See Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 91 (1st Cir. 1995)(citing 18 U.S.C. §§ 1962(a),(c)). At issue is the first element, whether [Paulson PRV] sufficiently plead that [it] w[as] harmed by [Amir's]

---

[8] Fahad's dismissal arguments regarding the insufficiency of the extortion pleadings, *prd docket 63, at ps. 22-23,* are referenced and incorporated to this motion.

investment of proceeds from its racketeering activity." Rivera v. P.R. Electric Power Authority, Case No. 11-cv-2003 DRD, *Opinion and Order,* (D.P.R., 9/25/2012), emphasis supplied.

"To pass muster, Plaintiffs' complaint must plead that [Paulson PRV] w[as] harmed by [Amir]'s investment of proceeds it received from [Amir, Fahad and Nerissa]'s alleged racketeering - mail and wire fraud [plus extortion and attempted extortion]. (…) [Paulson PRV]'s injury flowing from the investment of the proceeds it received from the alleged mail and wire fraud [plus extortion and attempted extortion] must be distinct from the injury arising from the racketeering activity itself. Lightning Lube **v**. Witco Corp., 4 F.3d 1153, 1188 (3d Cir. 1993)("[T]he plaintiff must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves.")(cited favorably in Compagnie De Reassurance D'Ile de France, 57 F.3d at 91.", Rivera v. P.R. Electric Power Authority, Case No. 11-cv-2003 DRD, *Opinion and Order,* (D.P.R., 9/25/2012).

It is evident that Paulson PRV does not even mention how is it that the alleged investment of the income received by Amir from the alleged extortion and mail fraud harmed him. At best, the payment of insurance premiums and commissions, which is the claimed injury, could be considered consequential to the alleged extortion and mail fraud, not to the investment of racketeering income[9].

"RICO allows a private civil claim by "[a]ny person injured in his business or property by reason of a violation of [the criminal RICO provisions]." 18 U.S.C. § 1964(c). Three

---

[9] Fahad's dismissal arguments regarding plaintiffs' failure to allege injury resulting from the investment of the alleged racketeering activity, and its effect on the proximate cause requirement, *prd docket 63, at ps. 16/18,* are referenced and incorporated to this motion.

Also, Glenda's arguments regarding plaintiffs' failure to properly allege an injury that can be causally related to the purported RICO violation – 1962(a) – is referenced and incorporated to this motion, *prd docket 61, ps. 3-4.*

Supreme Court cases interpret "by reason of" to require that a plaintiff in a civil RICO action show that the defendant's actions were "not only . . . a 'but for' cause of [plaintiff's] injury, but . . . the proximate cause as well." Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992); *see* Hemi Group, LLC v. City of N.Y., 559 U.S. 1, 9, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010) (citing Holmes, 503 U.S. at 268, 271, 274); Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006). The "central question" in evaluating proximate causation in the RICO context "is whether the alleged violation led directly to the plaintiff's injuries." *Anza, 547 U.S. at 461*." Sterling Suffolk Racecourse LLC v. Wynn Resorts Ltd et al, 990 F.3d 31 (1ˢᵗ Cir. 2021).

"The Supreme Court's most recent decision in this area, Hemi, states**,** "[a] link [between the RICO predicate acts and plaintiff's injuries] that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient" to show proximate cause. 559 U.S. at 9 (quoting Holmes, 503 U.S. at 271, 274). This requirement reflects "[t]he general tendency of the law, in regard to damages at least, . . . not to go beyond the first step." Id. at 10 (quoting Holmes, 503 U.S. at 271-72). Relatedly, the Hemi court found it highly "relevant to the RICO 'direct relationship' requirement . . . whether better situated plaintiffs would have an incentive to sue." Id. at 11-12 (citing Holmes, 503 U.S. at 269-70)." Id.

"Th[e First Circuit] court has identified in these Supreme Court cases "three functional factors with which to assess whether proximate cause exists under RICO." In re Neurontin Mktg. & Sales Pracs. Litig., 712 F.3d 21, 35-36 (1st Cir. 2013) (citing Holmes, 503 U.S. at 269-70). These are (1) "concerns about proof" because "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors," id. at 36 (quoting Holmes, 503 U.S. at 269); (2)

"concerns about administrability and the avoidance of multiple recoveries," id.; and (3) "the societal interest in deterring illegal conduct and whether that interest would be served in a particular case," id. As to this third factor, "directly injured victims can generally be counted on to vindicate the law . . . without any of the problems attendant upon suits by plaintiffs injured more remotely." Id. (quoting Holmes, 503 U.S. at 269-70)." Id.

Therefore, "[t]o have standing in a civil RICO claim, plaintiffs must show "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992). Plaintiffs may not succeed by merely proving that the predicate acts were a "cause in fact" of the plaintiffs' injuries; rather, Section 1964(c) **requires that the defendant's specified acts of racketeering [in this case the investment of income derived from racketeering activity] were the proximate cause of the plaintiffs' injuries**. *Id.* at 268; *Camelio v. Am. Fed'n*, 137 F.3d 666, 669-70 (1st Cir. 1998)(dismissing plaintiff's RICO claim and explaining proximate causation requirements under 18 U.S.C. § 1964(c)). Otherwise, plaintiffs may not recover in a civil RICO claim if their injuries are so far removed from the defendant's acts that they are indirect and derivative. *Holmes*, 503 U.S. at 268-69 (holding that plaintiff did not have standing because his injuries were indirect as his losses were purely contingent on the insolvency of third parties)." George Lussier Enterprises v. Subaru of New England, 393 F.3d 36, 51 (1st Cir. 2004), emphasis supplied.

Accordingly, to have standing to sue Amir for the "insurance scheme" Paulson PRV must (1) plead with specificity how the premiums it paid for the insurance of its properties, and/or the commissions paid by the insurance carriers to Amir, were excessive[10]; (2) plead sufficient facts

---

[10] As previously argued, Paulson PRV fails in complying with the heightened pleading standard.

to ascertain that the alleged acts directed to three non-party individuals constitute extortion or attempted extortion, and mail fraud[11]; (3) plead with specificity how the payment by Paulson PRV of insurance premiums and commissions is linked to the alleged extorsion and mail fraud, and (4) then plead an actual injury resulting from the alleged RICO violation – the investment of income derived from the alleged extortion and mail fraud. At its core, there is no explanation, or reasonable inference that can be reached, linking the failed or successful extortion of three non-party individuals with the payment of an insurance premium by Paulson PRV, or the payment of a commission to Amir by the insurance carriers, excessive or not. Therefore, the next steps in the proximate cause analysis are unreachable.

Moreover, the failure of the 1962(a) claim necessarily implies that the conspiracy claims under 1962(d) must also be dismissed. "A claim brought under Section 1962(d) requires a plaintiff to plead that "the conspirators agreed to facilitate or 'further an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'" White v. Union Leader Corp., No. Civ. 00-122, 2001 U.S. Dist. LEXIS 24516, 2001 WL 821527, at *7-8 (D.N.H. July 13, 2001)(collecting cases). Plaintiffs allege that [Amir] violated section 1962(d) by conspiring with [Fahad and Nerissa] to violate section[] 1962(a)[.]" Rivera v. P.R. Electric Power Authority, Case No. 11-cv-2003 DRD, *Opinion and Order,* (D.P.R., 9/25/2012). Once the sole substantive claim levied against Amir - Section 1962(a) – is dismissed, the conspiracy claim should follow the same expiring course.  "The First Circuit Court of Appeals holds that "if the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails." Efron v. Embassy Suites (Puerto Rico), Inc., 223

---

[11] As previously argued, Paulson PRV also fails in this requirement, because the denounced actions, affecting three non-party individuals do not comprise extortion and the mail fraud allegations are insufficient to comply with the applicable pleading standard.

F.3d 12, 21 (1st Cir. 2000)(citing Howard **v**. America Online, Inc., 208 F.3d 741, 751 (9th Cir. 2000); Salinas **v**. United States, 522 U.S. 52, 65, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997)).” Rivera v. P.R. Electric Power Authority, Case No. 11-cv-2003 DRD, *Opinion and Order,* (D.P.R., 9/25/2012).

Evidently, Count II fails to state a claim upon which relief can be granted and should also be dismissed.

### COUNT IV - THE INNOVEO “SCHEME”

Count IV alleges that Fahad and Amir fraudulently procured from Paulson PRV an “investment” in Innoveo, Inc.  Allegedly, “inflated financials” were used to secure an “investment” in the amount of $12,197,885.00. Paulson PRV further asserts that Fahad and Amir used “mail fraud”, “wire fraud” and “inflated financials”, without any explanation or specifics, to lock the $12.1M “investment”. Paulson PRV asserts, twenty (20) times in its RICO Complaint and twenty-eight (28) times in its RICO Case Statement, that the $12.1M transfer of money to Innoveo was to “invest” or was an “investment” made by Paulson PRV in Innoveo.

"Fraud in the sale of securities" is listed as a RICO predicate act. 18 U.S.C. § 1961(1). For a time, this opportunity to use a securities fraud claim as a predicate act for a RICO claim allowed private litigants to use RICO to threaten treble damage liability in securities litigation. See Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc., 189 F.3d 321, 327 (3d Cir. 1999). In response, Congress adopted the PSLRA, which generally bars private plaintiffs from bringing RICO claims based on "any conduct that would have been actionable as fraud in the purchase or sale of securities." 18 U.S.C. § 1964(c); Bald Eagle Area Sch. Dist., 189 F.3d at 327. **Congress meant not only to "eliminate securities fraud as a predicate offense in a civil RICO action, but also to prevent a plaintiff from pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on**

**conduct that would have been actionable as securities fraud**." <u>Bald Eagle Area Sch. Dist.,</u> <u>189 F.3d at 327</u> (alteration marks omitted) (internal quotation marks omitted)." <u>Calderon Serra</u> <u>v. Banco Santander PR</u>, 747 F.3d 1, 6-7 (1st Cir. 2014), emphasis supplied. *See also,* <u>Uviles v.</u> <u>RYS Int'l Corp</u>**,** 443 F. Supp. 2d 233 (D.P.R. 2006); <u>Lerner v. Colman</u>, 26 F. 4th 71 (1st Cir., 2022).

      The Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, § 107, 109 Stat. 737, 758 (Dec. 22, 1995) (the "PSLRA") was enacted by Congress in 1995. It amended RICO to eliminate securities fraud as a predicate act except where the defendant has been criminally convicted of securities fraud. The legislative history of the PSLRA provides, in part: "The [Conference] Committee intends this amendment to eliminate securities fraud as a predicate offense in a civil RICO action. In addition, the . . . Committee intends that a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." H.R. Rep. No. 104-369, at 47 (1995). "The PSLRA added both the exception quoted above (which we call the "PSLRA bar"), and an exception-to-the-exception (the "conviction exception"), which proceeds from the language quoted above:  "The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud." 18 U.S.C § 1964(c)…", <u>Lerner v. Colman</u>, *supra*, at 77.

      "Applying the PSLRA's bar on RICO claims requires a sort of reverse <u>Rule</u> <u>12(b)(6)</u> inquiry: we ask whether the conduct in question would be "actionable as fraud in the purchase or sale of securities," in which case a RICO count based on such fraud as a predicate act is not actionable. <u>18 U.S.C. § 1964(c)</u>; <u>see</u> <u>Fed. R. Civ. P. 12(b)(6)</u>. Actions for fraud in the purchase or sale of securities often arise under <u>section 10(b)</u> of the Securities Exchange Act of

1934 and U.S. Securities and Exchange Commission ("SEC") <u>Rule 10b-5</u>. <u>See</u> <u>15 U.S.C. § 78j</u> (prohibiting the use of "manipulative or deceptive device[s]" that violate SEC rules "in connection with the purchase or sale of any security"); <u>17 C.F.R. § 240.10b-5</u> (prohibiting, inter alia, fraudulent schemes and misleading omissions of material fact "in connection with the purchase or sale of any security"); <u>see also</u> <u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157, 128 S. Ct. 761, 169 L. Ed. 2d 627 (2008)</u> (noting the availability of an implied private right of action for 10b-5 violations). A typical 10b-5 securities fraud claim requires proof of: "'(1) a material misrepresentation or omission; (2) scienter, or a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.'" <u>Hill v. Gozani, 638 F.3d 40, 55 (1st Cir. 2011)</u> (quoting <u>Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005))</u>." <u>Calderon Serra v. Banco Santander</u>, *supra*, at 7-8.

Paulson PRV mentions only two emails and argues these constitute the mail fraud predicate acts for the "Innoveo Scheme":

1.      "On April 6, 2021, Fahad emailed Paulson the "Final Closing Documents" ***related to Paulson PRV's investment in Innoveo***. ***The email contained the terms and conditions of the investment.*** The terms and conditions were based on false representations regarding Innoveo's economic condition."

2.      "On April 8, 2021, Fahad caused an email to be sent to Paulson by a Paulson Entity employee which requested that Paulson sign a wire transfer form in order to ***transfer the investment sum to Innoveo***. The sending of this email was foreseeable to Fahad and his co-conspirators as part of the execution of the scheme and artifice to defraud." *RICO Case Statement, prd docket 53, at pages 13-14.*

Evidently, even if the bare allegations contained in Count IV of the complaint complied with the pleading's requirements[12], the actions described are indubitably related to investments, claim material misrepresentations or omissions, and assert a reliance on said misrepresentations for the investment. Therefore, and notwithstanding the failure to allege an economic loss, the actions complained of by Paulson PRV are "actionable as fraud in the purchase or sale of securities" and the PSLRA bars a RICO claim. Consequently, Count IV of the complaint should be dismissed in its entirety.

## CONCLUSION

Plaintiffs' claims against Amir, even if taken at face value, fail to state an actionable claim as a matter of law for lack of standing, lack of the required pleading specificity and the PSLRA bar. Consequently, all claims against Amir should be dismissed.

**WHEREFORE**, Amir Ghaffar, Coverisq LLC and Tygate PTE Ltd. request the dismissal of all claims.

**I HEREBY CERTIFY** that this document has been tendered for filing by electronic means and pursuant to FRCP 5(b)(2)(E) and 5(b)(3) and Puerto Rico Local Rule 5(b)(2), receipt of the

---

[12] The shares purchased by Paulson PRV were preferred and its analyst team conducted a full diligence of the company financials with a third-party banker before making an informed decision to buy a preferred stake in the company. He received his allocation shares in the company. And as the sole preferred shareholder he gets access to any distribution before any other shareholder.

Notice of Electronic Filing generated by the Court's Electronic Case Filing System constitutes the equivalent of service of the instant motion to all pertinent persons.

Dated: January 23, 2024.

**LOPEZ TORO**
**Estudio de Derecho**
PO Box 635
Rio Grande, Puerto Rico 00745
Tel. 787-957-2640; Mobile 787-646-6395
ESTUDIOLOPEZTORO@aol.com

*s/Bámily López Ortiz*
**Bámily López Ortiz**
USDC-PR 205410