## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **PAULSON PRV HOLDINGS LLC; ET AL.,** | |
| Plaintiffs, | |
| **v.** | **CIVIL NO.** 23 –1521 (SCC) |
| **FARAH VAYANI; SYBER GROUP LLC; ET AL.,** | |
| Defendants. | |

### RESPONSE IN OPPOSITION TO MOTION TO DISMISS (DOCKET NO. 55)

### I.       INTRODUCTION

Plaintiffs Paulson PRV Holdings LLC ("Paulson PRV" or "Plaintiff"), Duo Condado JV Holdings LLC, Bahia Beach Holding Company LLC, AIP PR Holdings LLC, SJ Beach PR LLC, and Regency Acquisition LLC's (collectively, "Paulson Entities") *Complaint* (Docket No. 1, "the *Complaint*") tells the story of innumerable incidents of conspiracy, fraud, embezzlement, deceit, self-dealing, and disloyalty by Defendant Fahad Ghaffar ("Fahad"); his close allies, including his wife and siblings; and entities controlled by the defendants.

Fahad's sister, Defendant Farah Vayani ("Farah"), profited from her brother's diversion of Paulson Entity business to an entity incorporated and controlled by her, Syber Group LLC ("Syber"), which purportedly dealt in information technology products and services. She was a knowing and willing participant in Fahad's scheme and went so far as to artificially inflate the price of the products she sold to the Paulson Entities to exponentially increase the commissions that she pocketed. But for Fahad's position at the Paulson Entities, and for his filial relationship with Farah, she would have not had the opportunity to do business with companies with the stature of the Paulson Entities. She got her foot in the door only because of Fahad's intervention.

Ultimately, her company received over $100,000.00 in payments from the Paulson Entities. Those payments were unjustly earned and must be returned to the Paulson Entities.

To no surprise, Farah now seeks to distance herself and Syber from her brother and the stench of his misconduct. She moves to dismiss the claims against her on two separate, but equally meritless, grounds—first, that the Court lacks supplemental jurisdiction over the claims brought against her and, second, that the *Complaint* fails to state a claim against her. (*See* Docket No. 55.) Her first, and perhaps most audacious, argument is that the claim for unjust enrichment brought against her, and the facts on which that claim is based, do not bear any relation with the claims brought against her codefendants, Fahad; Glenda Acevedo-Martinez ("Glenda"); Glen Acevedo; Amir Ghaffar ("Amir");[1] Saira Ghaffar ("Saira"); Nerissa Aponte ("Nerissa"); Thinking Ahead LLC ("Thinking Ahead"); GGSG LLC ("GGSG"); Coverisq LLC ("Coverisq"); and Tygate Pte. Ltd. ("Tygate"), for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.

Counts I through V of the *Complaint* state claims for violations of RICO against Fahad, Glenda, Amir, Saira, Nerissa, Thinking Ahead, GGSG, Coverisq, and Tygate. Federal courts have found that a "loose factual connection is generally sufficient" to satisfy the jurisdiction requirement that supplemental claims share a common nucleus of operative fact with the claims that pose a federal question." *Ammerman v. Sween*, 54 F.3d 423, 435 (7th Cir. 1995). But the RICO claims raised in the *Complaint* share much more than a loose factual connection to the allegations made against Farah and Syber. At their essence, the schemes relayed in the RICO counts of the *Complaint* tell the same story. Fahad, fueled by his unrelenting desire to amass wealth for himself and his close allies at the expense of the Paulson Entities, abused the trust and authority delegated

---

[1] Amir is also Farah's brother.

upon him by John Paulson ("Paulson"), the ultimate beneficiary of these entities, and connived to divert the business of the Paulson Entities to his family members and to himself, all while concealing the shameless self-interest that propelled his conduct. The claims against Farah and Syber tell an identical tale. Fahad exercised his authority at the Paulson Entities and directed the purchase of IT services and products to be made from Syber, a company owned and controlled by Farah, without disclosing the obvious conflict of interest underlying that decision and without disclosing that these products were deficient and artificially priced. Thus, the *modus opperandi* of the schemes, the participants in these plots, the temporal scope during which the acts were carried out, the parties affected by these criminal acts, and the evidentiary sources that could sustain the RICO claims are bound by commonality with the facts of the claims of unjust enrichment brought against Farah and Syber.

Farah and Syber's second argument, that the *Complaint* fails to state a claim for unjust enrichment under Puerto Rico law, is equally inapposite. Stating a claim for unjust enrichment under Puerto Rico law requires the "(1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment; and (5) absence of a legal precept excluding application of enrichment without cause." *Rivera v. Marriott Int'l, Inc.*, 456 F. Supp. 3d 330, 339–40 (D.P.R. 2020). Farah and Syber dispute the first 3 elements of the cause of action. However, selling deficient IT products at inflated prices to pocket exponentially higher commissions while concealing the conflict of interest driving the person purchasing these products on his employer's behalf plainly satisfies the first three elements of an unjust enrichment claim. Farah and Syber's motion to dismiss must therefore be **DENIED.**

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In 2013, Fahad Ghaffar, Farah's brother, was an unemployed small-time commercial real estate investor in Tampa, Florida who was floundering to make deals. (*See* Docket No. 1, ¶24.) John Paulson was the self-made, highly successful owner of Paulson & Co. Inc., an investment firm based in New York City that managed billions of dollars in client assets. (*Id.*, ¶25.) In 2013, Fahad sought out Paulson and begged for an opportunity to work for him. Paulson was persuaded to offer Fahad a position as a junior analyst at Paulson & Co. Inc. (*Id.*, ¶26.) Fahad accepted the position and began working for Paulson directly. (*Id.*, ¶27.) Shortly thereafter, Paulson expanded his investments in Puerto Rico and Fahad was tasked with assisting the senior managers of these investments. (*Id.*, ¶28.)

While Fahad slowly gained Paulson's trust and his standing at the Paulson Entities grew,[2] so did his thirst for money and Fahad began to devise ways to enrich himself and those around him at Paulson's expense. Fahad grossly abused the trust deposited in him by Paulson and orchestrated several schemes whereby he caused the Paulson Entities to engage his wife, Glenda; his brother, Amir; his sister, Saira; and, most relevant to this filing, his sister, Farah, to exploit business opportunities for their personal gain and at the expense of the Paulson Entities. For example, Fahad conspired with his wife, Glenda, and her shell company, GGSG, to sell overpriced furniture to the Paulson Entities under the false premise that the furniture manufacturer did not sell directly to hotels and that Glenda was a necessary intermediary between the Paulson Entities and the furnituremaker. This resulted in Glenda, through her shell company, pocketing upwards of $1,000,000.00 in commissions to which she had no legal right, and which were obtained through material misrepresentations. (*Id.,* ¶¶ 49-70.) Fahad also colluded with his brother, Amir, on various

---

[2] The term "Paulson Entities" encompasses Plaintiff, Paulson PRV Holdings LLC, Duo Condado JV Holdings LLC. Bahia Beach Holding Company LLC, AIP PR Holdings LLC, SJ Beach PR LLC, and Regency Acquisitions LLC.

schemes to enrich Amir at Paulson's expense, most of which involved the Paulson Entities' insurance policies. Ultimately, Fahad gifted Amir virtually all of the Paulson Entities' insurance business, which immediately resulted in Amir artificially inflating the price of insurance sold to the Paulson Entities and, in turn, exponentially increasing the commissions earned by Amir on those sales. (*Id.,* ¶¶ 71-73; 91-113; and 134-143.) Finally, similar to the scheme that he orchestrated with Farah, Fahad caused the Paulson Entities to purchase cheap rugs, art, and LED lights from Saira at inflated prices to the Paulson Entities. (*Id.*, ¶145.) Saira inflated the price of the goods she sold to the Paulson Entities to increase her sales commissions. (*Id.*).

Not to be outdone by her siblings, in 2022, Farah incorporated Syber Group LLC. (*Id.*, ¶22.) Fahad and Farah conspired and colluded to use Syber to sell information technology devices and services to the Paulson Entities at inflated prices to pocket the artificially created margin at the Plaintiff's expense. Fahad never disclosed the obvious conflict of interest implicated in engaging his sister to provide services to his employer, nor did he disclose that these services were deficient in quality and were being sold at inflated prices. (*Id.*, ¶147.) In 2023, Fahad caused over $100,000 in payments to go to Syber. (*Id.*)

On October 16, 2023, the Paulson Entities filed suit against Fahad Ghaffar; Glenda Acevedo-Martinez; Glen Acevedo; Amir Ghaffar; Saira Ghaffar; Farah Vayani; Nerissa Aponte; Thinking Ahead LLC; GGSG LLC; Coverisq LLC; Tygate Pte. Ltd.; and Syber Group LLC for violations of RICO; breach of fiduciary duty; civil fraud; tort; and unjust enrichment. In the *Complaint*, Plaintiff Paulson PRV brought forth claims for unjust enrichment against Farah and Syber ("Defendants") to recover the monies that Fahad caused to be improperly paid to Syber and/or Farah for IT services that were sold at inflated prices and were deficient in quality.

On January 3, 2024, Defendants filed a motion to dismiss all claims against them for lack of jurisdiction and for failure to state a claim upon which relief should be granted. (*See* Docket No. 55.) They primarily move to dismiss these claims by alleging the Court lacks supplemental jurisdiction over the claims brought against them. Their second argument is that the *Complaint* fails to state a claim against Farah and Syber. Defendants' arguments are legally flawed. First, the claims raised against the defendants share a common nucleus of operative facts with the RICO claims sufficient to confer the Court with supplemental jurisdiction over those claims. Second, the allegations that Farah and Syber artificially inflated prices to pocket increased commissions sufficiently set out a claim for unjust enrichment. Defendants' motion should therefore be **DENIED**.

### III.   ARGUMENT

#### a.  *The Court should exercise pendent party jurisdiction over the claim against Farah Vayani and Syber Group LLC.*

##### i.  <u>Courts have authority to exercise pendent jurisdiction over a claim that arises out of the same nucleus of operative fact as a federal question claim.</u>

"[W]hether to exercise supplemental jurisdiction is left to the sound discretion of the district court." *Pejepscot Indus. Park, Inc. v. Me Cent. R.R. Co.*, 215 F.3d 195, 206 (1st Cir. 2000). In exercising that discretion, courts in our circuit have been instructed to employ a two-part test. First, courts must determine "whether [they] have authority, or 'constitutional power,' over the state law claims, and, second, whether in our discretion we should entertain them." *Cuello-Suarez v. Autoridad de Energia Electrica de Puerto Rico*, 737 F. Supp. 1243, 1249 (D.P.R. 1990). In their motion, the defendants argue that this situation fails to satisfy the first prong of the two-part test on the sole ground that the claims against Farah and Syber do not share a common nucleus of operative fact with those claims brought under RICO. The defendants do not address the second

prong of the test. Because the defendants have effectively waived any argument that the exercise

of supplemental jurisdiction in this case would offend the values of judicial economy, convenience,

fairness, and comity, Plaintiff will address only the first step of the Court's inquiry. *See United*

*States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)("[I]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived.").

    28 U.S.C.A. § 1367(a) governs the first step of the court's inquiry. The statute provides:

> Except as provided in subsections (b) and (c) or as expressly provided
> otherwise by Federal statute, in any civil action of which the district courts
> have original jurisdiction, the district courts shall have supplemental
> jurisdiction over all other claims that are so related to claims in the action
> within such original jurisdiction that they form part of the same case or
> controversy under Article III of the United State Constitution. **Such**
> **supplemental jurisdiction shall include claims that involved the joinder**
> **or intervention of additional parties.**

28 U.S.C.A. § 1367(a)(emphasis added).

    Pursuant to Section 1367(a), "[a] district court may exercise pendent jurisdiction over a

state claim whenever it is joined with a federal claim which 'derive[s] from a common nucleus of

operative fact' and where the plaintiff 'would ordinarily be expected to try [both the federal and

state claims] in one judicial proceeding.'" *Brown v. Trustees of Boston University*, 891 F.2d 337,

356 (1st Cir. 1989). "The standard set forth in 28 U.S.C. section 1367 has been 'construed

generously,'" *Smylis v. City of New York*, 983 F.Supp. 478, 484 (S.D.N.Y. 1997), and federal

courts have found that a "'loose factual connection is generally sufficient.'" *Ammerman v. Sween*,

54 F.3d 423, 435 (7th Cir. 1995).[3]

---

[3] In their motion, the defendants misstate the holding of *Ammerman v. Sween*, 54 F.3d 423, 435 (7th Cir. 1995) within an extensive block quote taken from the case of *Fraticelli-Torres v. C.D.T. Dr. Arnaldo Garcia Rivera*, 2006 WL 8450211, at *4 (D.P.R. 2006). Specifically, the *Fraticelli-Torres* decision, authored by Judge Fusté, quotes language from the *Ammerman* decision providing that a "loose factual connection between the [state and federal] claims is **insufficient**." *See id.* (emphasis ours). However, upon reading the *Ammerman* decision, on which courts have repeatedly relied on when evaluating whether to exercise supplemental jurisdiction, it is clear that the Court used no

On the second prong of the analysis, the Supreme Court has directed district courts to consider the values of judicial economy, convenience, fairness, and comity in deciding whether to exercise supplemental jurisdiction. *See City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172-73 (1997). Specifically, courts are to consider "(a) whether the above stated factors would be served by trying the federal and state claims in a single proceeding; (b) whether the pendent claims present unsettled questions of state law or a surer-footed reading could be obtained in a state court; (c) whether the state issues predominate in terms of proof, scope of issues raised, or comprehensiveness of remedy sought; and (d) whether jury confusion is likely to result from the divergent theories of relief." *Cuello-Suarez* at 1250. (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966)). Defendants have waived any arguments regarding judicial economy, convenience, fairness, and comity by failing to raise them in their motion and have, therefore, conceded that these interests would be served by the exercise of supplemental jurisdiction in this case.

ii. **Paulson PRV's claims against Farah and Syber share a common nucleus of operative fact with the RICO claims.**[4]

Defendants argue that the "only conceivable relationship between the claims against [Farah and Syber] and those against the RICO defendants is [Farah's] familial relationship with [Fahad]." Docket No. 55, p. 11. This argument can only be the product of a complete ignorance of the facts alleged in the RICO-related causes of action or a deliberate attempt to induce the Court to err.

---

such language. The *Ammerman* court instead reached the opposite conclusion, finding that a "loose factual connection between the claims is generally **sufficient**" to satisfy requirement of commonality of operative facts. *Ammerman* at 435 (emphasis ours). The Court should take note of this fact and proceed under the "loose factual connection" standard generally applied in this context.

[4] The summaries contained below are concise recitation of the causes of action relayed in Plaintiffs' *Complaint* included for the purpose of illustrating the grave flaws in Farah and Syber's arguments. They are not intended to supplement or substitute the well-pled allegations in the Complaint.

In the *Complaint*, the Paulson Entities brought five RICO causes of action. Count I states a claim under RICO against Fahad, Glenda, Nerissa, and GGSG for their participation in a scheme to sell furniture to hotels owned by the Paulson Entities at exorbitant markups and through Glenda's shell company, GGSG. The scheme was supported by the utterly false premise that GGSG was a necessary intermediary for the purchase of furniture and that the arrangement would save the Paulson Entities money. In what became typical of Fahad's conduct throughout his time affiliated with the Paulson Entities, he used his access with the Paulson Entities to insert his wife and her shell company as an unnecessary middleperson, diverting over $1,000,000 in improper commissions to his wife.

Count II states a claim against Fahad, Amir, Nerissa, Coverisq, and Tygate in relation to Fahad and Amir's efforts to abuse the trust placed by the Paulson Entities in Fahad in order to divert all of their insurance business to entities owned and/or controlled by Amir and, presumably, Fahad. Because he effectively cornered all of the Paulson Entities' business for himself through Fahad's efforts, Amir was able to materially and artificially inflate the price of the insurance packages sold to the Paulson Entities thereby ensuring he earned exponentially higher commissions than those he would have earned had he priced the insurance services pursuant to market-driven considerations.

Count III states a claim against Fahad, Nerissa, and Thinking Ahead for embezzlement of Paulson Entity funds for Fahad's personal use. In this scheme, Fahad used his authority at the entities to cause the plaintiffs to pay for his personal expenses, including credit card payments at luxury stores and his housekeeping staff.

Count IV states a claim against Fahad and Amir related to misrepresentations made by them in order to induce John Paulson to invest in Innoveo, a company owned by Amir. Fahad

diverted a substantial portion of the software purchases made by the Paulson Entities to Innoveo to enhance Innoveo's financials, thereby making Innoveo appear like an attractive investment vehicle when pitching the investment to John Paulson. Ultimately, the bet on Innoveo, procured by false pretenses, proved to be a bad investment.

Count V states a claim against Fahad, Saira, and Nerissa for their participation in a scheme whereby Fahad caused the Paulson Entities to purchase cheap rugs, art, and LED lights from Saira at inflated prices to the Paulson Entities. The inflation of the price of these goods was intended to increase Saira's commissions from the sale of those goods.

Turning to the claims against Farah, which are virtually identical to those stated in Counts I and V, Fahad and Farah conspired and colluded to use Syber to sell information technology devices and services to the Paulson entities at inflated prices to pocket the inflated margin at Paulson's expense. Fahad never disclosed the obvious conflict of interest implicated in engaging his sister to provide services to his employer, nor did he disclose that these services were being provided at inflated prices.

It is patently obvious that these claims all share far more than the "loose factual connection" required to establish a common nucleus of operative fact. *See* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction,* § 3657, pp. 445–447. These claims are so factually interrelated that they appear to be chapters of the same story. First, all these schemes are related in time and space, as they all occurred during Fahad's tenure as one of the senior managers of the Paulson Entities and harmed each of the Paulson Entities named as plaintiffs in the *Complaint*. Second, the conduct giving rise to these causes of action is practically identical. When stripped to their essence, these causes of action relay the same narrative—Fahad abusing his position of trust and authority at the Paulson Entities to divert business to his allies, or entities controlled by his

allies, or to himself, all while concealing the true extent of his self-dealing. Finally, the witnesses (i.e. Paulson Entity employees and officers) and documentary evidence (i.e. invoices, purchase orders, quotes, and electronic mailings) required to sustain the RICO claims would overlap with the evidence necessary to prove the unjust enrichment claims.

In sum, the overlap in factual allegations, theories of liability, and evidence used to prove the claims in this case is heightened to such a degree that trying them together would be "eminently fair." *Ponce Federal Bank v. The Vessel Lady Abby,* 980 F.2d 56, 58 (1st Cir.1992). The causes of action not only share a common nucleus of operative fact but are related to a degree that the plaintiff "would ordinarily be expected to try [both the federal and state claims] in one judicial proceeding." *Brown v. Trustees of Boston University*, 891 F.2d 337, 356 (1st Cir. 1989). Accordingly, Farah and Syber's motion should be **DENIED.**

### b.  *The Complaint states a claim for unjust enrichment against Farah and Syber.*

#### i.  <u>Motions to dismiss pursuant to Federal Rule of Procedure 12(b)(6) require a Court to take all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party.</u>

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief could be granted. To survive a motion under this rule, a complaint must plead a plausible entitlement to relief. *Rodríguez-Vives v. Puerto Rico Firefighters Corps.*, 743 F.3d 278, 283 (1st Cir. 2014); *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013); *Rodríguez-Ortiz v. Margo Caribe*, 490 F.3d 92, 95 (1st Cir. 2007).

When considering a motion to dismiss under this rule, "the Court's inquiry occurs in a two-step process under the current context-based 'plausibility' standard established by *Twombly*, and *Iqbal*. 'Context based' means that a plaintiff must allege sufficient facts that comply with the basic elements of the cause of action." *AIG Ins. Co.-Puerto Rico v. PetSmart Puerto Rico, LLC*, 2021

WL 4598107, at *4–5 (D.P.R. 2021)(citations omitted). First, the Court must "'accept as true all of the allegations contained in a complaint[,]' discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Id.* at 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Plausibility exists when the pleaded facts allow the court to reasonably infer that the defendant is liable for the misconduct underlying the claims. *Morales-Cruz v. Univ. of P.R.*, 676 F. 3d 221, 224 (1st Cir. 2012). However, courts have been warned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" even if seemingly incredible. *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Id.* at 29.

### ii. Plaintiffs have stated a plausible claim for unjust enrichment against the Farah and Syber.

Defendants claim that Plaintiff Paulson PRV has failed to state a claim for unjust enrichment because it was Farah and Syber's "absolute prerogative" to price their goods sold to the Paulson Entities as they saw fit and the Paulson Entities' "absolute prerogative" to decide not to purchase those goods. Docket No. 55, p. 14. While it may be a vendors' prerogative to fix their prices, this entrepreneurial right cannot be exercised corruptly, nor in a manner contrary to law.

Farah and Syber sold IT products at **inflated** prices, not at prices dictated by the market. Inflated prices are not market-driven prices, they are prices that are "higher than they should be."[5] The phrase "higher than they should be" necessarily implies injustice in the pricing of that good. Moreover, as alleged in the *Complaint*, the intention behind the inflation of these prices was not to price the products consistent with the market for similar services, but instead to enrich Syber and its principal, Farah, by pocketing increased profits and commissions, all at the expense of the Paulson Entities. These allegations, when placed in the proper context and evaluated in light of common sense, plainly state a plausible cause of action for unjust enrichment under Puerto Rico law. Additionally, Fahad paved the way for his family members to reap the benefits of transacting business with the Paulson Entities, not because the goods or services they provided were fairly priced or beneficial to the hotels, nor because they were superior to other vendors. Fahad inserted them into the Paulson Entities' business and ensured that they were paid exorbitant sums of money that were not in line with the market nor with the product or service provided, simply because they were his family and friends.

To state a claim for unjust enrichment under Puerto Rico law, "[t]he following requirements must be pled: (1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment; and (5) absence of a legal precept excluding application of enrichment without cause." *Rivera v. Marriott Int'l, Inc.*, 456 F. Supp. 3d 330, 339–40 (D.P.R. 2020)(quoting *Montalvo v. LT's Benjamin Records, Inc.*, 56 F. Supp. 3d 121, 136 (D.P.R. 2014)). The doctrine of unjust enrichment is inapplicable where a contract governs the dispute between the parties. *See Puerto Rico Tel. Co. v. SprintCom, Inc.*, 662 F.3d 74, 97 (1st Cir. 2011).

---

[5] Cambridge English Dictionary, s.v. "inflated,"https://dictionary.cambridge.org/dictionary/english/inflated (January 23, 2024).

Farah and Syber have not alleged that there is a cause that justifies their unjust enrichment or otherwise forecloses its application to this case. *See for example Ortiz Andújar v. E.L.A.*, 122 D.P.R. 817, 829-30 (1988)(Noting that "the action for unjust enrichment cannot be applied because the patrimonial benefit has a valid cause, to wit: when there is a legal agreement or a will and when a right is fairly exercised."). The defendants are also not alleging that Paulson PRV has another legal mechanism through which to pursue a remedy against the defendants. The parties' dispute centers on whether Plaintiff has pled elements 1 through 3.

Plaintiffs plausibly pled the first element of a cause of action for unjust enrichment. The Complaint alleges that Syber, an entity of which Farah is the only shareholder, received upwards of $100,000 from the Paulson Entities in 2023 alone. In receiving those $100,000, Farah, as Syber's sole shareholder, and Syber, as the recipient of the payments, "enriched" themselves as required by the first element of a cause of action for unjust enrichment.

Plaintiffs have also plausibly pled the second and third elements of unjust enrichment. The $100,000 paid to Syber, which ultimately benefitted Farah, was paid-out by Paulson PRV. Defendants claim that, because those $100,000 pertain to services actually provided by them and received by Paulson PRV, there can be no "loss" and thus no unjust enrichment. Defendants, however, appear to ignore the well-pled allegation that the price of the goods and services provided to Paulson PRV by the defendants was inflated. Because the prices on those goods were inflated, a portion of the funds received for those sales pertains to the artificial margin created by Farah and Syber in conjunction with Fahad.[6] At the very least, this artificial margin paid by Paulson PRV, and received by the defendants, is the "loss" required to sustain a claim for unjust enrichment.

---

[6] Without the benefit of discovery on the matter, it is nearly impossible to pinpoint this dollar figure exactly. *See García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013)(Holding that district courts should accord "some latitude in cases where "[a] material part of the information needed is likely to be within the defendant's control.").

Similarly, because the funds "lost" by Paulson PRV were received by the defendants, Plaintiffs have also satisfied the requirement that the defendants' enrichment have a nexus with the plaintiff's loss.

Paulson PRV's allegation that Farah and Syber inflated prices to pocket increased commissions on the sale of IT goods and services to the Paulson Entities are sufficient to state a claim for unjust enrichment. The allegation implies an enrichment by Farah and Syber, a corresponding loss by Paulson PRV, and a nexus between the enrichment and the loss. Most importantly, despite the defendants' misleading allegations to the contrary, other courts have found unjust enrichment in very similar situations. *See Thompson's Gas & Elec. Serv., Inc. v. BP Am. Inc.*, 691 F. Supp. 2d 860, 872 (N.D. Ill. 2010)("Plaintiffs have adequately alleged their conferral of a benefit upon Defendants—in this case, the difference in price between the inflated price paid and the value of the propane had the market not been misinformed."); *Tyman v. Pfizer, Inc.*, 2017 WL 6988936, at *19 (S.D.N.Y. 2017)(Finding that "allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment."); *Harris Cnty., Texas v. Eli Lilly & Co.*, 2020 WL 5803483, at *18 (S.D. Tex. 2020)(Holding that "it is plausible that defendants have been unjustly enriched through Harris County's alleged overpayments" for insulin that was sold at artificially inflated prices.); and *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1301 (C.D. Cal. 2015)(Finding a plausible claim for unjust enrichment was pled by alleging that plaintiffs conferred a benefit upon defendant by paying for insurance policies that were inflated by the costs of "kickbacks and commissions subsumed into the price of the insurance premium."). Accordingly, the defendants' motion should be **DENIED.**

## IV.   CONCLUSION

The Court should exercise supplemental jurisdiction over the claims brought against Farah and Syber. These claims are profoundly connected with the RICO claims and share far more than the "loose factual connection" required to exercise supplemental jurisdiction over state law claims. These claims also plainly state a cause of action for unjust enrichment under Puerto Rico law. The *Complaint* alleges enrichment by Farah and Syber, a corresponding loss by Paulson PRV, and a nexus between the two. The Defendants' motion (Docket No. 55) should be **DENIED.**

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

**RESPECTFULLY SUBMITTED** San Juan, Puerto Rico, on January 29, 2024.

**DMR Law LLC**
**Counsel for Plaintiffs**
Capital Center Bldg.
Suite 1101
San Juan, PR 00918
Tel. 787-331-9970

*s/ Maria A. Dominguez*
Maria A. Dominguez
USDC-PR No. 210908
maria.dominguez@dmralaw.com

*s/Javier F. Micheo Marcial*
Javier F. Micheo Marcial
USDC-PR No. 305310
j.micheo@dmrpr.com

*s/ Julián R. Rodríguez-Muñoz*
Julián R. Rodríguez-Muñoz
USDC-PR No. 308301
j.rodriguez@dmrpr.com

*Counsel for Plaintiffs*



WWW.CSTLAWPR.COM
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433

lllach@cstlawpr.com

***S/JUAN J. CASILLAS-AYALA***
**JUAN J. CASILLAS-AYALA**
USDC PR NO. 218312

***S/LUIS F. LLACH-ZÚÑIGA***
**LUIS F. LLACH ZÚÑIGA**
USDC PR NO. 223112