**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

PAULSON PRV HOLDINGS LLC, et al.,

Plaintiffs,

v.

FAHAD GHAFFAR, et al.,

Defendants.

CIVIL No. 23-1521 (SCC)

**REPORT AND RECOMMENDATION**

## I. Procedural Background

On October 16, 2023, Plaintiffs Paulson PRV Holdings LLC, Duo Condado JV Holdings LLC, Bahía Beach Holding Company LLC, AIP PR Holdings LLC, SJ Beach PR LLC, and Regency Acquisition LLC ("Plaintiffs") filed a complaint against Fahad Ghaffar, Glenda Acevedo Martínez, Glen Acevedo, Amir Ghaffar, Saira Ghaffar, Farah Vayani, Nerissa Aponte, Thinking Ahead, GGSG LLC, Converisq LLC, Tygate PTE LLC, and Syber Group LLC alleging Racketeering Influenced and Corrupt Organizations ("RICO") violations, 18 U.S.C. § 1962(a), breach of fiduciary duty, unjust enrichment, and fraud. ECF No. 1. On March 25, 2024, Plaintiffs filed a second amended complaint adding additional parties Bahía Beach Resort LLC, Bahía Beach CH Development LLC, and Ocean Drive Development LLC, as well as amending their RICO allegations to include violations of 18 U.S.C. § 1962(c) and (d). ECF No. 106. Each Defendant moved to dismiss the second amended complaint in separate motions. ECF Nos. 112, 113, 114, 115, 117, 128, 168. Plaintiffs filed an omnibus response to the motions to dismiss.[1] ECF No. 130.

[1] Plaintiffs' omnibus response includes a response to ECF Nos. 112, 113, 114, 115, 117, and 128. The motion to dismiss filed by Saira Ghaffar (ECF No. 168) was responded to separately.

The motion to compel arbitration and motion to dismiss the second amended complaint (ECF No. 115) filed by Defendants Fahad Ghaffar ("Mr. Ghaffar") and Thinking Ahead LLC ("Thinking Ahead") (collectively "Defendants") was referred to the undersigned for a report and recommendation. ECF No. 148. For the reasons that follow, it is recommended that Mr. Ghaffar's motion to compel arbitration be GRANTED and Mr. Ghaffar's motion to dismiss be stayed pending arbitration of his claims. As to defendant Thinking Ahead, it is recommended that their motion to compel arbitration be DENIED without prejudice and, given the recommendation to compel arbitration as to Mr. Ghaffar, Thinking Ahead's motion to dismiss should be stayed pending arbitration of Mr. Ghaffar's claims.

## II. APPLICABLE LEGAL STANDARD

Defendants presented their Motion to Compel Arbitration pursuant to the Federal Arbitration Act ("FAA") and various subsections of Federal Rule of Civil Procedure 12. "District courts should apply the summary judgment standard" in cases regarding motions to compel arbitration because said standard "better aligns with the FAA's command to evaluate whether the moving party has met its burden of demonstrating that an agreement to arbitrate is not 'in issue' than Federal Rule of Civil Procedure 12's plausibility standard." *Rodríguez-Rivera v. Allscripts Healthcare Solutions, Inc.*, 43 F.4th 150, 168 (citing *Air-Con, Inc. v. Daikin Applied Latin America*, LLC, 21 F.4th 168, 174-175 (1st Cir. 2021). Therefore, the summary judgment standard will guide the Court's review of the referred motion.

A district court should evaluate a motion to compel arbitration using the summary judgment standard to "determine whether a genuine dispute of fact exists regarding the parties' agreement to arbitrate." *Air-Con, Inc.*, 21 F.4th at 176. Pursuant to the summary judgment standard, the Court must construe the record in the light most favorable to the non-moving party

and draw all reasonable inferences in its favor. *Taite v. Bridgewater State Univ., Bd. Of Trs.*, 999 F.3d 86, 92 (1st Cir. 2021).

If the non-moving party provides materials that "create a genuine issue of fact about a dispute's arbitrability, the district court 'shall proceed summarily' to trial to resolve that question." *Air-Con, Inc.*, 21 F.4th at 175 (quoting 9 U.S.C. § 4 ("Section 4"); *Neb. Mach. Co., Inc. v. Cargotec Sols., LLC*, 762 F.3d 737, 744 (8th Cir. 2014)). Section 4's instruction to proceed "summarily" to trial "requires that the district court limit the focus of the 'expeditious and summary' §4 trial to the question of whether the parties agreed to arbitrate." *Air-Con, Inc.*, 21 F.4th at 175 (quoting *Moses H. Cone Memorial Hosp. v. Mecury Constr. Corp.*, 460 U.S. 1, 22 (1983); *Boykin v. Family Dollar Stores of Michigan, LLC*, 3 F.4th 832, 844 (6th Cir. 2021). A party may seek limited discovery to support or oppose a motion to compel arbitration; however, such discovery must be "targeted" to the "disputed contract-formation questions." *Boykin*, 3 F.4th at 844. The district court "should not rule on the motion to compel arbitration until it resolved any factual disputes that require resolution before it can be determined whether the parties agreed to arbitrate." *Air-Con, Inc.*, 21 F.4th at 176.

## III. ANALYSIS

In their motion to compel arbitration, Defendants contend that Condado Duo La Concha SPV, LLC, Condado Duo Vanderbilt SPV, LLC, Condado Duo Vanderbilt Hotel Towers SPV, LLC, Bahía Beach Resort LLC, Bahía Beach CH Development LLC, Ocean Drive Development, LLC, and SJ Beach PR LLC ("MSA Signatory Plaintiffs") are compelled to arbitrate all claims brought by them in which Fahad Ghaffar ("Mr. Ghaffar") is a defendant because they all signed the Management Services Agreement ("MSA"), which governed the provision of services by Mr. Ghaffar, acting through FG Hospitality LLC ("FG Hospitality"), to the MSA Signatory Plaintiffs. ECF No. 115 at 5-6.

Under First Circuit precedent, "[i]n deciding a motion to compel arbitration, a court must ascertain whether: '(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.'" *Gove v. Career Sys. Dev. Corp.,* 689 F. 3d 1, 4 (1st Cir. 2012) (quoting *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008)). The party seeking to compel arbitration bears the burden of demonstrating these factors. *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 174 (1st Cir. 2021). If these factors are met, courts must enforce the arbitration agreement in accordance with its precise terms. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343–344 (2011).

Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.

9 U.S.C. § 2. The United States Supreme Court has stated that this statute "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Therefore, section 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Id*. at 24–25.

It is well-settled that questions of arbitrability must be handled with a high regard for the federal policy favoring arbitration, and any doubts concerning the scope of arbitration agreement should be resolved in favor of arbitration. *See e.g. Colón de Sánchez v. Morgan Stanley Dean*

*Witter*, 376 F. Supp. 2d 132, 135 (D.P.R. 2005). However, the FAA cannot compel parties to arbitrate an issue they have not agreed to arbitrate. *Rivera-Colón v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 207 (1st Cir. 2009). Therefore, "to trigger the FAA's protective reach, the existence of a valid and enforceable agreement to arbitrate between the parties must be identified." *Id*. at 168 (citing *Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 80 (1st Cir. 2018)).

As the First Circuit stated in *Nat'l Fed'n of the Blind*, "there's an important distinction between arguments challenging the validity of an agreement and those challenging an agreement's formation." 904 F.3d at 80 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444, n.1 (1967)). Validity challenges can also be divided into two types: "(1) challenges to the validity of an entire contract which contains an arbitration clause, and (2) challenges to the validity of the specific agreement to resolve the dispute through arbitration." *Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 96 (1st Cir. 2015) (citing *Rent-A-Center, West Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *Buckeye Check*, 546 U.S. at 444). Challenges of the first kind are the type for an arbitrator to decide, while challenges of the second type are for the courts to decide. *See Farnsworth*, 790 F.3d at 96.

Given that the Court must evaluate motions to compel arbitration against the summary judgment standard, it is important to establish at the onset whether a genuine dispute of fact exists regarding the parties' agreement to arbitrate. *Air-Con, Inc.*, 21 F.4th at 176. The Court has taken into account the parties' motions in support of and in opposition to compelling arbitration and the MSA, which has been attached as an exhibit to Defendants' motion to compel arbitration. ECF Nos. 115, 130. As to Mr. Ghaffar's motion to compel arbitration, neither party has challenged the legitimacy of the MSA containing the arbitration agreement, nor has either party contested that

Mr. Ghaffar is the sole member of FG Hospitality.[2] Notably, Mr. Ghaffar's relationship to FG Hospitality is written clearly in the MSA. ECF No. 115-1 at 2 (defining FG Hospitality as the "Service Provider" and Mr. Ghaffar as "sole member of the Service Provider."). Therefore, there are only two issues that the Court must determine as to Mr. Ghaffar's motion to compel arbitration: whether Mr. Ghaffar is an agent of FG Hospitality under the law, and thus can compel arbitration as a nonsignatory, and whether the allegations fall within the scope of the MSA, regardless of whether said allegations are true.

### A. Compelling Arbitration as a Nonsignatory

To arbitrate a dispute, there must first be a valid arbitration agreement between the parties, which is determined according to state law principles governing contract formation. *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 10-11 (1st Cir. 2014). Neither party contests the validity or enforceability of the MSA. Instead, Plaintiffs claim that the agreement is inapplicable to Mr. Ghaffar as he was not a party to the agreement. Specifically, Plaintiffs argue that the agreement to arbitrate binds the MSA Signatory Plaintiffs and the "Service Provider," which the MSA defines as FG Hospitality, not Mr. Ghaffar. ECF No. 115-1 at 2. Section 13 of the MSA provides:

> Any controversy or claim between the Service Provider and the Companies arising out of or relating to this Agreement, the services performed by Service Provider, or the termination of this Agreement shall be submitted to and settled by a single arbitrator at an arbitration in New York, New York, administered by the American Arbitration Association ("AAA") in accordance with the National Rules for the Resolution of Employment Disputes.

*Id.* at 5, ¶ 13. Defendants do not dispute the fact that the MSA defined the Service Provider as FG Hospitality. However, Defendants contend that Mr. Ghaffar, as a matter of law, "has authority to

[2] For reasons discussed later in this report and recommendation, the Court has not been placed in a position to rule on Thinking Ahead's motion to compel arbitration. *Infra* Section E, p. 16.

enforce the MSA and compel arbitration, both in his individual capacity as a signatory and sole member of FG Hospitality, and as the duly authorized representative and manager of FG Hospitality." ECF No. 115 at 8.

As a general proposition, parties are only bound by the obligations they agreed to assume. *InterGen N.V. v. Grina,* 344 F.3d 134, 142 (1st Cir. 2003) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). However, there are exceptions allowing non-signatories to compel arbitration. Arbitration agreements may be enforced by non-signatories through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, —— U.S. ——, 140 S. Ct. 1637, 1644 (2020) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630, (2009)). Moreover, "[a] non-signatory may be bound by or acquire rights under an arbitration agreement under ordinary state-law principles of agency or contract." *Grand Wireless, Inc.*, 748 F.3d at 10-11 (citing *Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 62 n.2 (1st Cir. 2003).

Defendants argue that it is well-established that non-signatory defendants who are *agents* of a signatory corporation may compel arbitration against signatory plaintiffs. ECF No. 115 at 8-9, n. 10. Puerto Rico law dictates whether Mr. Ghaffar is an agent of FG Hospitality. *See Grand Wireless, Inc.*,748 F.3d at 10-11. Puerto Rico law defines an agent as a person authorized to act on behalf of another person or corporation. 31 L.P.R.A. § 4421 ("By the contract of agency, a person binds himself to render some service, or to do something for the account or at the request of another."). The other person is referred to as the principal in agency law. The principal's offer of

authority may be express or implied, inferred "from the acts of the principal, from acts or deeds which manifestly reveal such declaration of consent necessarily implying, evidently and clearly, the intent to be bound." *Bank of Nova Scotia v. Vélez Rullán*, 91 P.R.R. 347, 353, 91 D.P.R. 358 (1964) (citing 31 L.P.R.A. § 4422); *see also CMI Capital Mkt. Inv., LLC v. Municipality of Bayamon*, 410 F. Supp. 2d 61, 75 (D.P.R. 2006). The agent's acceptance of authority "may also be express or implied, the latter being inferred from the acts of the agent." 31 L.P.R.A. § 4422.

Defendants propose that FG Hospitality is a limited liability company, whose only member is Mr. Ghaffar. ECF No. 115 at 4, 8, 12. Plaintiffs do not contest that fact in their opposition to Defendants' motion to compel arbitration. *See Corporación Del Centro Cardiovascular de Puerto Rico y el Caribe v. Medshere Systems Corp.*, 2023 WL 3469874 (D.P.R. April 12, 2023) (taking uncontested facts as true for purposes of deciding on a motion to compel arbitration applying a summary judgment standard). Regardless of whether Plaintiffs contest the fact in their opposition, the uncontested MSA explicitly refers to Mr. Ghaffar as the sole member of the Service Provider, FG Hospitality. ECF No. 115-1 at 2. Therefore, this fact is undisputed. Furthermore, the Service Provider's responsibilities under the MSA were undertaken by Mr. Ghaffar, as manager and sole member of FG Hospitality, where, pursuant to the MSA, Mr. Ghaffar provided services to the MSA Signatory Plaintiffs described in Schedule A of the MSA[3]:

> General supervision of the Hotel Properties and the operator of each of the Hotel Properties, including, subject to John Paulson's oversight and prior approval, review and approval of monthly budget and capital improvements, design and approval of marketing plans, supervision of operators, concessionaries, and service providers, management of commercial relationships with current and prospective tenants, general oversight, strategic planning, and reporting to ownership on all matters related to the Hotel Properties.

---

[3] Mr. Ghaffar's title is "Manager" in the signature line of the MSA. ECF No. 115-1 at 8. Therefore, from here on out, the Court refers to Mr. Ghaffar as manager or sole member of FG Hospitality.

ECF No. 115-1 at 9. It follows that Mr. Ghaffar was an agent of FG Hospitality as he was the manager who carried out the management and services under the MSA. *Id*. Moreover, Mr. Ghaffar had express and apparent authority to act on behalf of the FG Hospitality, as evidenced by the fact that the MSA makes clear that the MSA Signatory Plaintiffs were aware that Mr. Ghaffar, as the sole member of FG Hospitality, would be the one providing services pursuant to Schedule A.[4] ECF No. 115-1 at 5 ("Fahad Ghaffar hereby represents and warrants to the Companies that he is the sole member of the Service Provider…"). Therefore, FG Hospitality "is the principal and [Mr. Ghaffar], as an agent of [FG Hospitality], is allowed to compel arbitration under the agency doctrine because their corporate structure are directly related." *Main Course Food Solutions, Inc. v. Kraft Heinz Co.*, 523 F. Supp.3d 198, 204 (D.P.R. 2021) (finding that nonsignatories, who are agents of a signatory corporation, may be compelled to arbitration).

Cases from other circuits have found an agent to be subject to a principal's arbitration agreement, specifically holding that "nonsignatory defendants who are agents of a signatory corporation may compel arbitration against signatory plaintiffs." [5] *Ouadani v. TF Final Mile LLC*,

---

[4] The sole member of a limited liability company ("LLC") has been deemed an agent in other jurisdictions. In *Uhar & Co., Inc. v. Jacob*, 840 F.Supp.2d 287, 290 (D.D.C. January 12, 2012), an action was brought against a limited liability company ("LLC") and its sole member, alleging that they failed to pay certain commissions pursuant to a brokerage agreement. For purposes of summary judgment, the court held that because the LLC's sole member entered into the brokerage agreement as the LCC's agent and acted within his scope of actual authority as the LLC's agent, the LLC was party to the agreement and was thus legally bound by its terms. Florida courts have reached a similar conclusion as it relates to arbitration. *See Heller v. Blue Aerospace, LLC,* 112 So. 3d 635, 637 (Fla. 4th Dist. Ct. App. 2013) (permitting the sole member and employee of an LLC to invoke that LLC's arbitration clause against a signatory plaintiff who brought claims against the nonsignatory employee for conduct undertaken in his capacity as an agent of the LLC). Similarly, in *Meridian Imaging Sols, Inc. v. OMNI Bus. Solutions LLC.*, 250 F. Supp. 3d 13 (E.D. VA 2017), the plaintiff alleged that a competitor's employee stole the plaintiff's confidential information and trade secrets to support the competitor's business. 250 F. Supp. 3d at 15, 17–18. The plaintiff was pursuing its claims against the competitor in arbitration and brought a civil action against the employee "arising out of the same nucleus of operative facts" as the claims in arbitration . *Id.* at 17. *Meridan Imaging Sols* held that the employee, a nonsignatory to the arbitration agreement, could enforce the arbitration clause against the plaintiff because the plaintiff's claims against the employee were "based on his conduct as an agent of" the company. *Id.* at 23.

[5] These holdings make it clear that the nonsignatory needed to be a defendant and the signatory seeking to avoid arbitration needed to be the Plaintiff. *See Ouadani,* 876 F.3d at 37 (refusing to extend the rationale of these cases, claiming it was inapposite to the case because Ouadani is a nonsignatory plaintiff who is trying to avoid arbitration, not a nonsignatory defendant seeking to compel it).

876 F.3d 31, 37 (1st Cir. 2017) (citing *Grand Wireless, Inc.*, 748 F.3d at 10-11; *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121-22 (3rd Cir. 1993); *Arnold v. Arnold Corp.-Printed Commc'ns For Bus.*, 920 F.2d 1269, 1281-82 (6th Cir. 1990); *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986)). These holdings were predicated on (1) the fact that the claims of the signatory plaintiffs arose from the nonsignatory agent's conduct on behalf of the signatory principals, and (2) the signatory principals' intent to protect their agents by means of the arbitration provisions. *See Grand Wireless*, 748 F.3d at 10-11; *Pritzker*, 7 F.3d at 1122; *Arnold*, 920 F.2d at 1282; *Letizia*, 802 F.2d at 1188. Such a rule is necessary because "a corporate entity or other business can only operate through its employees and an arbitration agreement would be a meaningless arrangement if its terms did not extend to them." *Grand Wireless, Inc.*, 748 F.3d at 1 (citing *Pritzker*, 7 F.3d at 1122). As the First Circuit noted, "[i]f arbitration defenses could be foreclosed simply by adding as a defendant a person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised." *Hilti, Inc. v. Oldach,* 392 F.2d 368, 369 n. 2 (1st Cir. 1968). Thus, it is evident that a nonsignatory agent may sometimes invoke, or be bound by, a principal's arbitration agreement when a claim is brought against an agent for conduct undertaken in his capacity as an agent of the principal.[6]

Plaintiffs' second amended complaint, incorporated by reference in Plaintiffs' opposition to Defendants' motion to compel arbitration, makes it clear that Mr. Ghaffar's alleged actions were taken in his capacity as FG Hospitality's agent. ECF Nos. 106, 130. Throughout his management of the MSA Signatory Plaintiffs' properties, which was governed by the MSA, Mr. Ghaffar

[6] It is not the case that *any* agreement a principal enters into will likewise bind its agents. To the contrary, "[w]hen an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, ... the agent is not a party to the contract unless the agent and third party agree otherwise." Restatement (Third) of Agency § 6.01 (Am. L. Inst. 2006). However, here, Mr. Ghaffar signed the agreement individually and as FG Hospitality. Therefore, agency law further supports arbitration in this instance.

allegedly devised a scheme to defraud the MSA Signatory Plaintiffs by selling products at inflated prices in connection with his role under the MSA, and allegedly paying off personal expenses, or those of his relatives and friends, with Paulson entities' funds being billed as purported legitimate costs in carrying out his role under the MSA. *See* ECF No. 130 at 7-11, 16-21 (citing ECF No. 106). Plaintiffs argue in their motion in opposition to Defendants' motion to compel arbitration that Mr. Ghaffar defrauded Plaintiffs to benefit himself through "personal endeavors for individual gain, tortious misconduct, fraudulent behavior, criminal activity, or any activities that transcend the defined managerial functions." ECF No. 130 at 99. Plaintiffs argue that these allegedly fraudulent actions are outside of the scope of Mr. Ghaffar's managerial duties under the MSA and therefore not subject to arbitration. *Id*. However, these actions under scrutiny question the legitimacy of decisions that stem directly from Mr. Ghaffar's managerial role outlined in the MSA. Therefore, the claims brought against Mr. Ghaffar are for conduct untaken in his capacity as an agent to FG Hospitality.

Moreover, MSA Signatory Plaintiffs and Mr. Ghaffar certainly wished to have their disputes settled by arbitration. FG Hospitality could operate only through the actions of Mr. Ghaffar, as manager and sole member; therefore, "it would have made little sense to have agreed to arbitrate if [Mr. Ghaffar] could be sued separately without regard to the arbitration clause." *Grand Wireless*, 748 F.3d at 11. Moreover, the arbitration clause is written in broad language to encompass "any controversy or claim arising out of or relating to" the MSA. ECF No. 115-7 at 4, ¶ 13. While the arbitration provision specifies that it covers any controversy or claim between "the Service Provider and the Companies arising out of or relating to this Agreement," it also includes disputes arising out of or relating to "*the services* performed by the Service Provider." *Id*. The cases from other circuits finding that an agent is subject to a principal's arbitration

agreement for the most part involve professional malpractice disputes growing out of service contracts between individuals and financial institutions. *See Pritzker,* 7 F.3d at 1114 (involving handling of cash management account); *Roby,* 996 F.2d at 1357 (involving insurance underwriting); *Letizia,* 802 F.2d at 1186 (involving handling of securities account). "A person who enters into a service contract with a firm contemplates an ongoing relationship in which the firm's promises only can be fulfilled by future (unspecified) acts of its employees or agents stretching well into an uncertain future." *McCarthy v. Azure*, 22 F.3d 351, 357 (1st Cir. 1994). As the allegedly wrongful acts were related to the "services performed by the Service Provider," which were performed by Mr. Ghaffar pursuant to his responsibilities under the MSA as the sole manager of FG Hospitality, the arbitration clause can be enforced by Mr. Ghaffar even as a nonsignatory agent.[7]

**B. Scope of Arbitration Agreement**

The next question is whether the dispute falls within the scope of the arbitration agreement. The arbitration provision in Section 13 of the MSA applies to "any controversy or claim between the Service Provider and the Companies arising out of or relating to this Agreement, the services performed by the Service Provider…" *Id*. Such language is " 'paradigmatic' of a broad arbitration clause." *Encore Benefit Mgmt., Inc. v. Phoenix Benefits Mgmt., LLC*, 2019 WL 5957174, at *4 (D.P.R. 2019) (citing *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 91, 100 (S.D.N.Y. 2015)). The First Circuit has interpreted broad language of this nature as covering "contract-generated or contract-related disputes between the parties however labeled: it is immaterial whether claims are in contract or in tort…" *Acevedo Maldonado v. PPG Indus. Inc.*, 514 F.2d 614, 616 (1st Cir. 1975);

[7] *See also Fahad Ghaffar v. Paulson PRV Holdings*, LLC, 23-1528(SCC), ECF No. 52 (holding that a nonsignatories can be entitled to the benefit of the stay provisions of Section 3 of the FAA when the action is based on the same operative facts and inherently inseparable from the pending arbitration).

*see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614 (1985) (agreement to arbitrate "all disputes, controversies or differences which may arise between [parties] out of or in relation to [certain articles] of this Agreement or for the breach thereof" was sufficiently broad to encompass claims under the Sherman Act, Federal Automobile Dealers' Day in Court Act, Puerto Rico Dealers' Act and Puerto Rico antitrust and unfair competition statute); *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (noting that "arising out of" covers all disputes "having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se"). When deciding whether the parties agreed to arbitrate a certain matter, courts apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Under Puerto Rican law, an agreement is 'clear' when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation....'" *Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo Inc.*, 96 F.3d 10, 15 (1st Cir. 1996) (quoting *Executive Leasing Corp. v. Banco Popular de Puerto Rico*, 48 F.3d 66, 69 (1st Cir. 1995)) (further citations omitted).

Here, the MSA contains broad language that any dispute between FG Hospitability and the MSA Signatory Plaintiffs arising out of or relating to the agreement, or the services performed by the Service Provider will be submitted to and settled by arbitration. ECF No. 115-1 at 5 ¶ 13. Plaintiffs contend that, while the arbitration provision is "admittedly broad, it is circumscribed to disputes that fall within the scope of managerial services provided by FG Hospitality…and it was [not] meant to cover disputes that arise from actions or conduct divorced from the specified-managerial duties bestowed upon FG Hospitality." *Id*. at 98. In other words, Plaintiffs contend that "actions that do not conform to these specified duties—such as personal endeavors for individual

gain, tortious misconduct, fraudulent behavior, criminal activity, or any activities that transcend the defined managerial functions—are naturally excluded from the MSA's scope." *Id*. at 99. This argument is unconvincing. The allegations in Plaintiffs' complaint, regardless of whether they are true, clearly relate to the services performed and carried out by Mr. Ghaffar in connection with his duties under the MSA to provide the managerial services pursuant to "Schedule A" to MSA Signatory Plaintiffs' properties in Puerto Rico. *See* ECF No. 130 at 7-11, 16-21 (citing ECF No. 106). Given the liberal federal policy favoring arbitration agreements established by the FAA, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, *whether the problem at hand is the construction of the contract language itself* or an allegation of waiver, delay, or a like defense to arbitrability." *Id*. (emphasis added). Indeed, it is well-settled that questions of arbitrability must be handled with a high regard for the federal policy in favor of arbitration, and any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration. *See Colón de Sánchez v. Morgan Stanley Dean Witter*, 376 F. Supp. 2d 132, 135 (D.P.R. 2005); *Carro v. Parade of Toys, Inc.*, 950 F. Supp. 449, 451–52 (D.P.R. 1996); *Cardona Tirado v. Shearson Lehman Am. Exp., Inc.*, 634 F. Supp. 158, 159 (D.P.R. 1986). Therefore, the dispute is within the scope of the arbitration agreement.

**C. Waiver of Right to Arbitration**

Third, the party seeking an arbitral forum, Mr. Ghaffar, has not waived its right to arbitration. Plaintiffs do not contend that Mr. Ghaffar waived his right to arbitration. Nor is waiver borne out by the circumstances of the case, as Mr. Ghaffar raised the issue of arbitration close to the inception of litigation. *See Creative Sols. Group, Inc. v. Pentzer Corp.*, 252 F.3d 28, 32 (1st Cir. 2001) (finding defendant did not waive right to arbitration where it moved to compel arbitration two months after it was required to plead to the complaint and five months after

plaintiffs filed the action). Nor do Plaintiffs claim to be prejudiced by any delay on the part of Defendants in moving to compel arbitration. A plaintiff must show prejudice to establish implied waiver of the right to arbitrate. *See Restoration Pres. Masonry, Inc. v. Grove Europe, Ltd.*, 325 F.3d. 54, 61 (1st Cir. 2013).

As all three factors in deciding a motion to compel arbitration are met, the court must enforce the arbitration agreement in accordance with its terms. *See AT&T Mobility LLC*, 563 U.S. at 343–344.

**D. Staying the Action as to All Non-Arbitrable Claims is Appropriate**

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Thus, once a party adequately demonstrates that the claims pending before the court are subject to arbitration pursuant to a valid, written arbitration agreement, the FAA directs the court to stay the proceedings pending the completion of the arbitration. *Id*. In the First Circuit, courts may dismiss rather than stay the action when **all the issues** before the court are arbitrable. *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 372-73 (1st Cir. 2011) (citing *Next Step Med. Co. v. Johnson & Johnson Int'l*, 619 F.3d 67,71 (1st Cir. 2010) (emphasis added). Here, not all issues before the Court are arbitrable. Plaintiffs have twenty-two claims in their second amended complaint against twelve Defendants. ECF No. 106. Only claims against

Mr. Ghaffar are compelled to arbitration.[8] Therefore, pursuant to the FAA, it is recommended that the Court stay the proceedings pending the completion of arbitration.

**E. Compelling Arbitration as to Defendant Thinking Ahead**

The Court cannot conduct the same analysis as to Thinking Ahead. Unlike Mr. Ghaffar, Thinking Ahead did not sign the MSA. The MSA explicitly states that Mr. Ghaffar is the sole member of FG Hospitality, whereas Thinking Ahead is not mentioned in the MSA at all. Moreover, the MSA is silent as to whether Mr. Ghaffar is the sole member of Thinking Ahead. It is alleged in the complaint that Mr. Ghaffar is the sole member of Thinking Ahead, and Defendants admit as much in their motion to compel arbitration. ECF No. 115 at 34, n.31. Thus, it does not appear to be a contested fact; however, the Court still has not been placed in a position to determine the agency relationship between Thinking Ahead and FG Hospitality.[9]

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Mr. Ghaffar's motion to compel arbitration be GRANTED and that the Court enter an order directing that arbitration shall proceed in the manner provided for in the Settlement Agreement. Mr. Ghaffar's motion to dismiss should be stayed pending arbitration of his claims. As to defendant Thinking Ahead, it is recommended that their motion to compel arbitration be DENIED without prejudice and, given the

[8] *See generally* SAC Count I (RICO), Count III (RICO), Count IV (RICO), Count VI (Fraud), Count IX (Fraud), Count XII (Fraud), and Count XV (Unjust Enrichment). All the MSA Signatory Plaintiffs are named Plaintiffs in Counts I and VI, together with Duo Condado JV Holdings LLC ("Duo Condado Holdings"), and Bahia Beach Holding Company LLC ("Bahia Beach Holding"). All the MSA Signatory Plaintiffs are also named Plaintiffs in Count III, together with Duo Condado Holdings, Bahia Beach Holding, AIP PR Holdings LLC ("AIP Holdings"), and Regency Acquisition LLC ("Regency"). Four of the MSA Signatory Plaintiffs are named Plaintiffs in Counts IV and IX, together with Bahia Beach Holding. All of the MSA Signatory Plaintiffs are also named Plaintiffs in Counts XII and XV, together with Paulson PRV Holdings LLC ("Paulson PRV"), Duo Condado Holdings, Bahia Beach Holding, AIP Holdings, and Regency. *Id*.

[9] If evidence were to be presented showing that Thinking Ahead was an agent of FG Hospitality, perhaps a different result could ensue.

recommendation to compel arbitration as to Mr. Ghaffar, Thinking Ahead's motion to dismiss should be stayed pending arbitration of Mr. Ghaffar's claims.[10]

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholescale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico, this 20th day of December, 2024.

s/Marcos E. López
U.S. Magistrate Judge

[10] It is in the discretion of the Court to decide whether for administrative purposes and efficiency considerations, all pending motions to dismiss should be denied without prejudice pending resolution of the claims against Mr. Ghaffar in arbitration, prior to staying the case pursuant to Section 3 of the FAA.